## LION COAL CO. v. ANDERSON, Internal Revenue Collector.

### No. 690.

Circuit Court of Appeals, Tenth Circuit.

Dec. 15, 1932.

E. A. Walton, of Salt Lake City, Utah, for appellant.

Alva C. Baird, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (C. R. Hollingsworth, U. S. Atty., of Salt Lake City, Utah, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

This action was filed by the Lion Coal Company to recover $6,379.86, which it claims was wrongfully collected from it by distraint for income taxes assessed against the Wyoming Coal Company for the fiscal year ended February 28, 1918. From a judgment in favor of the government, this appeal is taken.

## I.

The Lion Company contends that the taxes assessed against the Wyoming Company for the fiscal year ended February 28, 1918, had been fully paid when the distraint warrant was issued.

The total of the several payments made, including the amount paid when the distraint warrant was levied, equalled the total taxes duly assessed for the fiscal years 1918 and 1919. The controversy arises because of the manner in which certain of such payments were applied by the collector.

In May, 1919, the Wyoming Company forwarded $604.62 to be applied on the fiscal year 1918 account. On June 30, 1919, the collector credited such amount on the fiscal year 1919 account. In January, 1922, the Wyoming Company paid the collector $1,847.24, the amount then shown to be due on the collector's books for the fiscal year 1918. If the $604.62 had been properly applied, the January, 1922, payment would have caused an over-payment of exactly that amount. Under the provisions of the Revenue Act of 1921, § 252 (42 Stat. 268), such over-payment would have been credited against the taxes then due for the fiscal year 1919. In substance these transactions amounted to an over-payment and a credit thereof in accordance with the statute. Furthermore, the Wyoming Company by paying, in January, 1922, the full amount then shown by the collector's books to be due for the fiscal year 1918, impliedly ratified the application theretofore made of the $604.62 payment on the fiscal year 1919 account.

In January, 1922, the collector sent a notice to the Wyoming Company of a tax balance as due for the fiscal year 1918. This balance was in fact due for the fiscal year 1919 and was being carried erroneously on the collector's books as a charge for the fiscal year 1918. The Wyoming Company, for the purpose of discharging this particular tax balance, sent a check for $4,539.99 and a claim for abatement of $1,235.25. On this claim for abatement $1,115.49 was allowed. The collector first credited the amount of such check and abatement allowance on the 1918 account, and later, upon discovering the error, transferred the charge and the credits to the fiscal year 1919. The Lion Company contends that it is entitled to have such credits restored to the Wyoming Company's tax account for the fiscal year 1918. This contention is untenable. There was due a tax of $5,775.24. The Wyoming Company intended that the check for $4,539.99 and the abatement claim should be applied against that particular tax. The fact that the collector had erroneously listed it on the fiscal year 1918 account did not make it a tax for that period. Since the Wyoming Company intended to discharge that particular tax, the Lion Company cannot now complain because adjusting book entries were made to correctly reflect the facts.

On February 9, 1924, the collector sent the Wyoming Company notices and demands for taxes showing the following amounts as due: $425.74 for 1916; $10,165.87 for the fiscal year 1918; and $119.76 for the fiscal year 1919. A check for $4,331.51 was forwarded to the collector. Such payment was applied by crediting the 1916 and fiscal year 1919 accounts with the amounts due thereon, and crediting the remainder of $3,786.01 on the fiscal year 1918 account.

In its claim for refund, the Lion Company inferentially asserted that the remittor directed that the remittance be applied on unpaid balances due from the Wyoming Company for the fiscal year 1918 and prior years. The proof, however, did not establish any such direction. Since the payment was insufficient to take care of the three accounts, in the absence of a showing that the Wyoming Company directed the application of the payment, we must hold that the action of the collector in satisfying two accounts and applying the balance on the third was proper.

We accordingly conclude that the amount collected on the distraint warrant had not theretofore been paid.

## II.

On September 22, 1924, the Lion Company paid the collector $3,174.89 to discharge a tax assessed against the Wyoming Company for the fiscal year 1919. The Lion Company contends that this assessment, when made, was barred by the statute of limitation, and therefore the payment operated as an over-payment under the statute and should have been credited on the fiscal year 1918 account. An alleged overpayment based on the foregoing facts was not included in any claim filed with the collector. The filing of such a claim was a condition precedent to its assertion in this action. Red Wing Malting Co. v. Willcutts (C. C. A. 8) 15 F.(2d) 626, 49 A. L. R. 459; certiorari denied 273 U. S. 763, 47 S. Ct. 476, 71 L. Ed. 879; Tucker v. Alexander (C. C. A. 8) 15 F.(2d) 356, 357.

## III.

Finally, the Lion Company contends that the distraint against its bank account was unlawful.

In 1920 the Lion Company acquired all the physical assets of the Wyoming Company, including its mining properties, equipment, and supplies, and has since operated the same. The Lion Company issued its stock to the stockholders of the Wyoming Company in exchange for their shares in the latter company, and assumed all the liabilities of the Wyoming Company. The latter company, however, was not dissolved. In December, 1925, a warrant for distraint was issued against the Wyoming Company and presented by a deputy collector to L. B. Farr, an officer in both companies. Farr explained that the Wyoming Company had transferred all its assets to the Lion Company, and that the latter had a bank account in the Utah First National Bank. The deputy collector, in the presence of Farr, presented the warrant to the bank and undertook to levy on the bank account. Thereupon, the cashier issued a cashier's check for the amount of the warrant, payable to the collector, and handed it to Farr, who in turn gave such check to the deputy collector.

■ Prior to the enactment of section 280, Revenue Act 1926 (44 Stat. 61 [26 USCA § 1069 and note]), a tax liability could only be enforced against a transferee of the taxpayer's property by a suit in equity or an action at law (Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289), and property of such a transferee could not be lawfully subjected to a distraint for taxes assessed against the transferor.

It follows that the bank account of the Lion Company could not be lawfully subjected to the distraint and levy. Was it so subjected? Distraint is regulated by statute. A levy, notification, and sale is required. No sale can be made for a period of ten days after the levy. Sections 117–119, title 26, USCA. Such a procedure was not carried out. Instead, when the deputy collector undertook to levy upon the bank account, the bank's officer prepared a cashier's check and delivered it to Farr, an officer of the Lion Company, who then gave it to the deputy collector. Farr protested solely on the ground that the tax of the Wyoming Company was being collected for the wrong year.

■ We think the effect of the transaction was not the unlawful subjection of the bank account to a distraint, but a payment made under protest by the Lion Company. The Lion Company, instead of paying the tax, could have enjoined the distraint and sale of its bank account for such tax. Section 3224, R. S. (26 USCA § 154), providing that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," would not have inhibited such an injunction. The injunction would not have been against the collection of a tax, but against the enforcement by distraint of a legal or equitable liability of a transferee of the taxpayer's property. Long v. Rasmussen (D. C. Mont.) 281 F. 236; Trinacia Real Estate Co., Inc., v. Clarke (D. C. N. Y.) 34 F.(2d) 325. Phillips v. Commissioner, supra, does not hold otherwise. That decision dealt with a distraint proceeding occurring subsequently to the enactment of section 280, Revenue Act 1926, 26 USCA § 1069 (a) (1), and note which provides:

"(a) The amounts of the following liabilities shall * * * be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter. * * *

"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this chapter or by any prior income * * * Tax Act."

Under this provision the tax is assessed against the transferee and the distraint is to collect a tax from the transferee.

We conclude, therefore, that there was a payment under protest of the tax by the Lion Company rather than a subjection of its property to levy and sale under a distraint warrant, and that it cannot recover such payment without showing it was not liable for the tax.

Furthermore, the claim for refund did not challenge the legality of the distraint on the ground that the property of a transferee was not subject to distraint on account of the tax assessed against its transferor.

The judgment is affirmed.