## ESTATE OF GEORGE HERBERT ATKINS, DECEASED, LAURA STOUDER ATKINS, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109961.   Promulgated June 30, 1943.

R. H. Cross, Esq., and A. H. Brandt, Esq., for the petitioner.
Frank T. Horner, Esq., for the respondent.

338

**OPINION.**

MELLOTT, *Judge:* The first issue requires determination of the treatment to be accorded the proceeds of insurance collected by the partner-

spondent contends that the decedent's interest in the insurance pro- ship of which decedent was a member at the time of his death. Re- ceeds reflected in the value of his interest in the partnership, which amounted to $79,985.82, is includible in his gross estate as a part of the value of his interest in the partnership at the time of his death. Petitioner contends that this amount should be excluded from the value of the partnership interest and included, together with the amount collected under other policies upon the decedent's life amount- ing to $16,850.60. in schedule D of the estate tax return as insurance taken out by the decedent upon his own life, receivable by beneficiaries other than the executrix of his estate. If petitioner is correct, the amount includible in schedule D as insurance would be $79.985.82 plus $16,850.60, or $96,746.42, from which would be subtracted the $40,000 exclusion provided for in section 811 (g) of the Internal Revenue Code. This would leave $56,746.42 in the gross estate as insurance subject to tax. The parties agree that petitioner correctly reported the insurance proceeds of $16,850.60, and that the $40,000 exclusion would eliminate any tax upon this amount. The essence of the con- troversy therefore is whether petitioner is entitled to an additional exclusion of $23,149.40.

The pertinent provisions of the applicable statute, section 811 of the Internal Revenue Code, are set out in the margin.[1]

In order for petitioner to prevail she has the burden of proving that the $79,985.82 was receivable by beneficiaries other than the executrix of decedent's estate, under policies taken out by him upon his own life. Upon brief the following statement is made: "There is no question here whether these policies were taken out by the decedent on his own life." following which argument is made, directed solely to the question whether the proceeds were receivable by bene- ficiaries other than the executrix of the decedent's estate. It is not clear why petitioner has assumed that the question whether the poli- cies were taken out by the decedent upon his own life is not involved. We find no concession by the respondent to that effect nor is there any statement in his brief which would justify any such assumption.

The phrase "taken out by the decedent" has been the subject of ex- tensive litigation. No attempt will be made to review all of the cases

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death;

*     *     *     *     *     *

(g) PROCEEDS OF LIFE INSURANCE.—To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

here.[2] It is sufficient for present purposes to state generally that, prior to the enactment of the Revenue Act of 1942 (sec. 404), insurance was not deemed to have been taken out by the decedent, even though application be made by him, if the premiums were actually paid by some other person or corporation and not out of funds belonging to or advanced by the decedent and if he retained no legal incidents of ownership, such as a power to change the beneficiary, to surrender or cancel the policy, to assign or revoke an assignment, to pledge the policy for a loan, to obtain its cash surrender value, etc. See article 25 *et seq.* of Regulations 80. Cf. corresponding articles of Regulations 70. Cases applying some part of the general rule are numerous, a few of them being *Wilson* v. *Crooks.* 52 Fed. (2d) 692; *Estate of Harry W. Hahn,* 38 B. T. A. 3; and *Estate of Edward Doerken,* 46 B. T. A. 809.

The Treasury Department has been somewhat vacillating in its position. At one time it applied the test of payment of premiums, later shifting to the triple test of payment of premiums, control. and legal incidents of ownership. and still later going back to the position originally taken. This is of no particular importance here except to "point up" the fact that payment of premiums, directly or indirectly, has always been a crucial factor.

In the reply brief of petitioner the following statement appears:

> The premiums were paid by the partnership and hence were paid in part, of course, by the partners other than the deceased. The decedent therefore only paid such part of the premiums as were represented by his proportionate interest in the partnership from time to time. Section 81.25 of Regulations 105 specifically provides that where a portion of the premiums or other consideration was actually paid by another and the remaining portion by decedent, either directly or indirectly, such insurance is considered to have been taken out by the latter in the proportion, that the payments therefor made by him bear to the total amount paid for the insurance. Of the total of $200,000 represented by the policies, therefore, only that portion thereof that the payments made by decedent bore to the total amount paid for the insurance was taken out by him. This amount, as has been stipulated, was $79,985.82.

This statement contains some inaccuracies. The parties did not stipulate that $79.985.82 represented that portion of the insurance proceeds "that the payments made by decedent bore to the total amount paid for the insurance." They simply stipulated that the decedent's proportionate interest in the insurance proceeds, as reflected in the assets of the partnership, amounted to $79.985.82. As shown in our findings, this amount was arrived at by determining that a part of the insurance proceeds represented capital and the remainder profit, and by dividing the amounts assigned to capital and profit by the percentage interest of the decedent in these two items.

---

[2] For a full discussion see Paul, Federal Estate and Gift Taxation, 10.12 *et seq.*

Decedent had a 46.05 percent interest in the capital of the partnership and a 33⅓ percent interest in its profits. The $79,985.82 represents the amount of his interest as a partner in a partnership asset at the time of his death and not the amount of insurance purchased by premium payments made by him.

The undisputed facts disclose that the partnership took out three policies of insurance aggregating $200,000 on the joint lives of the decedent and another member of the firm; that it paid the premiums on these policies; that it was the beneficiary; and that the policies constituted a part of its assets. Any doubt that this was the true intenion of the parties is dispelled by an examination of the new article which was added under date of May 29, 1934. It is evident, therefore, that the decedent did not actually pay, directly or indirectly, any part of the insurance premiums with funds belonging to him. The funds used were partnership property. "It has repeatedly been determined * * * that the property or effects of a partnership belong to the firm and not to the partners * * *." *Bank* v. *Carrollton Railroad*, 78 U. S. 624. "The personal property of a partnership is owned not by the partners individually, but by the partnership. By the contract of partnership, the partners acquire a joint interest in the personal effects of the partnership. Each partner is possessed *per my et per tout*, that is, the interest of each member of a partnership extends to every portion of its property, and is a joint interest in the whole and not a separate interest in any particular part." 40 Am. Jur. § 107; *Sam H. Harris*, 11 B. T. A. 871, 874; *Henry Wilson*, 16 B. T. A. 1280, 1287. Decedent had no interest in the funds expended for insurance, save as they might figure in "his share of the profits and surplus." *Stilgenbaur* v. *United States*, 115 Fed. (2d) 283; *Helvering* v. *Walbridge*, 70 Fed. (2d) 682; *United States* v. *Hack*, 33 U. S. 270; Modern Law Partnership, Rowley, vol. 1, sec. 292. The partnership, as an unincorporated organization through which business was being carried on, was a "person" (sec. 1001, Revenue Act of 1936), even though not a taxable entity under the revenue act (secs. 181 and 182, Revenue Acts of 1936 and 1938). It chose to invest some of its funds in acquiring an asset, viz., the three insurance policies. It had full control over them and all legal incidents of ownership. Thus it met all of the tests, including the payment of premiums.

From what has been said it is apparent we are of the opinion that the insurance was taken out by the partnership rather than by the decedent upon his own life. While this conclusion requires a decision in favor of the respondent, it may not be amiss to discuss briefly the principal argument of petitioner, viz., that the insurance proceeds were receivable by beneficiaries other than the executrix of decedent's estate.

Petitioner first argues that the proceeds of the life insurance policies were payable, and were paid, to the partnership and became a part of its assets, losing their identity as insurance proceeds. It is urged, therefore, that even if the executrix had the right to recover the interest of the decedent in the partnership from the surviving partners (including decedent's proportionate interest in the insurance) the amount would not have been received by her "as insurance." This argument really tends to support respondent's determination and the conclusion reached by us. The essence of it is that all the decedent owned at the time of his death was an interest in a partnership. which had invested a substantial portion of its funds in insurance policies, and that the insurance proceeds should be treated the same as any other partnership asset in computing the value of decedent's partnership interest.[3]

A determination that no part of the insurance proceeds was receivable by the executrix as insurance would not help the petitioner in view of our conclusion that no part of the insurance was received by the partnership "under policies taken out by the decedent upon his own life." It is perhaps pertinent to mention, however, that if we had held that part of the insurance was taken out by the decedent upon his own life. there is substantial authority for the view that his interest in the insurance proceeds should be treated as insurance receivable by the executrix of decedent's estate. If it can be said that decedent, directly or indirectly, paid part of the insurance premiums with funds belonging to him, thus disregarding the rule that partnership property belongs to the partnership. then by a parity of reasoning the decedent consented, in advance of his death. to the payment of his part of the partnership debts with his portion of the insurance proceeds. In other words, it would seem to follow that the partnership, as a trustee, collected decedent's part of the insurance proceeds and paid his part of the debts. To the extent that proceeds of insurance are used for the payment of the debts of a decedent they should be included in gross estate as insurance receivable by the executrix. *Pacific National Bank of Seattle, Executor*, 40 B. T. A. 128; *Estate of Waldo Rohnert*, 40 B. T. A. 1319. The debts so paid are of course deductible; so where, as here, the debts (i. e., decedent's share of the partnership debts) equal the amount received as insurance, the estate subject to tax is not increased. We do not choose to rest our decision on this ground. We merely point out what seems to be the result of following consistently and to its logical conclusion the theory that the individual partners, rather than the partnership, took out the insurance.

---

[3] For a discussion of the property rights of a partner in specific partnership property see Uniform Laws, Ann., Book 7, Partnership, Part V, par. 24, *et seq.*

Another reason advanced by petitioner in support of her position that the insurance proceeds were receivable by beneficiaries other than the executrix is that under the partnership agreements the executrix could not have recovered from the surviving partners decedent's interest in the partnership (including his proportionate share of the proceeds of the life insurance represented therein), and that this interest was payable and deliverable to the "heirs of the decedent" and not to his estate. Petitioner urges therefore that decedent's widow was the real beneficiary because she was his designated heir. This argument is unsound in principle, and, if sustained, would present insuperable administrative difficulties. In a sense it is true that the insurance benefited her; but that would have been equally true if, e. g., she had been the owner of shares of stock in a corporation, the value of which had been enhanced through the death of her husband upon whose life the corporation had carried insurance. One of the unsound premises upon which the argument is bottomed may be mentioned. Upon brief it is said: "* * * the interest of the decedent in the partnership at the time of his death was never at any time an asset of his estate and was never subject to his creditors in the estate, nor subject to distribution in any other sense than in the sense of designating the person or persons to whom he desired his interest to go. The person or persons so designated was the person or persons with whom, under the agreements, the surviving partners were to deal." No provisions of the Probate or Civil Code of California have been cited in support of this statement, and we have found none. Under section 571 of the Probate Code the interest of a decedent in a partnership is required to be included in the inventory and appraised as other property, though the surviving partner has the right to continue in possession of the partnership and to settle its business. Partnership interests "may be sold in the same manner as other personal property" (sec. 774, Probate Code of California), the only limitation apparently being that partnership debts have priority over individual debts (sec. 2434, Civil Code of California). These rules were recognized and applied by the executrix and she distributed the assets to herself with the consent and approval of the court having jurisdiction over the administration of the estate. We can not believe that all of the interested parties were mistaken in determining that the interest of the decedent in the partnership was an asset of his estate, even though fortuitously it was never subjected to the payment of his debts and passed, as he intended, to his widow.

In our judgment the respondent correctly included in decedent's gross estate the fair market value of his interest in the partnership and we so hold. He also correctly allowed, as an exclusion under subdivision (g) of section 811, *supra*, the aggregate amount "receiv-

able by all other beneficiaries as insurance under policies taken out by the decedent upon his own life," viz., $16,850.60.

The second issue arises from the determination of the respondent that the value of decedent's interest in the partnership, as reported in the estate tax return, should be increased in the amount of $2,997.41 because of an understatement of the fair market value of shares of stock, which were part of the assets of the partnership on the date of decedent's death.

The partnership agreements provided that in the event of the death of one of the partners an appraisement of the partnership assets should be made "by a competent person or firm designated by the surviving partners" and that investments, such as stocks and bonds, should be appraised "at their fair market value." The parties have stipulated that the fair market value of the shares of stock owned by the partnership was $86,002.74 on the date of decedent's death. The surviving partners made an appraisal (whether the executrix consented that they should do so rather than make the designation is not shown) using the bid prices on the exchange on the date of death. They thus determined that the shares had a value of $77,010.52. The amount which respondent has determined should be added to the value of the decedent's partnership interest is one-third of the difference between $86,002.74 and $77,010.52, or $2,997.41.

Petitioner argues that the surviving partners made an appraisement of the value of the decedent's interest in the partnership as of the date of his death; that as a result of this appraisement the value of decedent's partnership interest was fixed at $198,819.93; that no one was entitled to a greater amount for that interest; and that to add to the value of that interest, by a reappraisement of some of the assets of the partnership, would, in effect, require a tax to be paid on property or values which will never be received by anyone.

The argument is appealing; but in our judgment petitioner can be given no relief under the posture in which the issue is presented. The question is the fair market value of decedent's interest in the partnership. This requires that a "fair appraisal of all the assets" be made and the business "be given a net value equal to the amount which a willing purchaser * * * would pay therefor to a willing seller." (Art. 10 (d), Regulations 80; *Estate of Leopold Kaffie*, 44 B. T. A. 843; *Guggenheim* v. *Helvering*, 117 Fed. (2d) 469.)

Presumably the parties are in agreement as to all factors going to make up the valuation of the partnership interest save one—the fair market value of the stock. The general rule for determining the fair market value of listed stocks and bonds is to take the mean between the highest and lowest quoted selling prices upon the valuation date. Art. 10 (c), Regulations 80; *Estate of Daniel Guggenheim*, 39 B. T. A.

251, 293, and cases cited. No attempt was made by petitioner to prove that the stock had a lesser fair market value than that determined by the respondent. On the contrary it was stipulated that the fair market value was precisely what he determined. Apparently petitioner did not intend to concede the issue; but as we view it the stipulation can only be construed as an admission that all the items going to make up the fair market value of decedent's interest in the partnership were correctly appraised by the respondent. The fact that a lesser amount may have been paid over to his estate or heirs is immaterial. Respondent committed no error in adding the amount presently in issue to the fair market value of decedent's interest in the partnership.

The last question is whether respondent correctly limited the deduction from gross estate under section 812 (b) (3) I. R. C. to the amount ($868.10) which he determined to be due "from the decedent in his own behalf" to his wife (widow). The facts are not in dispute and are shown in our findings. Decedent and his partners (Kroll and David Atkins) had signed and delivered to Laura Stouder Atkins a joint and several obligation, promising to pay to her order the sum of $14,172.03. The partnership paid $3,158.57, leaving a balance due of $11,013.46. The payee, upon her books of account, charged each of the makers with one-third of that amount, or $3,671.15. Kroll paid his one-third on March 22, 1939 and decedent, before his death, paid all of his one-third except $868.10. The amount due, therefore, represented David Atkins' share of the debt, plus $868.10 due from the decedent.

Petitioner argues that since the note was "joint and several" decedent, at the time of his death, was obligated to pay the entire amount due and, since he was primarily liable, that it devolved upon respondent to show that the balance due had not been contracted bona fide by the decedent or for an adequate and full consideration in money or money's worth. The executrix recognizes, however, that proportionate contribution from the co-makers could have been required under section 1432 of the Civil Code of California and has stipulated that each "was financially able to meet the entire obligation." In petitioner's closing brief it is urged that respondent should have added to the value of the net estate the right of contribution against the surviving partners rather than disallowing the claimed deduction.

Respondent determined that decedent had incurred the obligation for a full and adequate consideration in money or money's worth to the extent of $868.10. Implicit in this determination is a holding that the remainder of the amount claimed as a deduction had not been so incurred, casting upon petitioner the burden of showing the contrary. The question, however, need not be labored. The function

of this tribunal is to determine the correct tax liability. Petitioner contends that respondent, instead of denying a portion of the amount claimed as a deduction, should have included in gross estate the value of the right to require contribution from the other makers. It may be that the right more properly should be labeled exoneration or subrogation; but that is of no moment. What is important is the admission that the right is of value—each of the makers being solvent—and that it is obvious net estate will be understated if the amount claimed as a deduction is allowed and no additional amount is included in gross estate. The correctness of the deficiency in tax is the controlling factor—not the method by which it is determined. *Hughes* v. *Commissioner.* 38 Fed. (2d) 775; *Helvering* v. *Gregory*, 69 Fed. (2d) 809; *Helvering* v. *Gowran*, 302 U. S. 238. We are convinced that the amount determined by the respondent is correct. We therefore decline to disturb it.

*Decision will be entered for the respondent.*