**ADLER et al. v. NICHOLAS, Collector of Internal Revenue, et al.**

No. 3536.

Circuit Court of Appeals, Tenth Circuit.

March 5, 1948.

Rehearing Denied March 29, 1948.

675

David H. Morris, of Denver, Colo., and John T. Haney, of Colorado Springs, Colo., for appellants.

Harry Marselli, of Washington, D.C., (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson and Fred E. Youngman, Sp. Assts. to Atty. Gen., Max M. Bulkeley, U. S. Atty., of Wray, Colo., and Henry E. Lutz, Asst. U. S. Atty., of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellants, Jacques Adler and May E. Adler, husband and wife, were engaged as partners in the jewelry business after January 1, 1944, in Colorado Springs, Colorado, and in Denver, Colorado. Prior thereto, Jacques Adler had been engaged individually in such business. He owned 60% and his wife owned 40% of the partnership business. In 1946, apparently it became necessary for the partnership to sell its partnership business in Colorado Springs, Colorado, to pay its partnership debts. It accordingly sold its Colorado Springs jewelry business to Martin Jewelers, Incorporated, hereinafter called Martins, for $78,289.75. Fifty Thousand Dollars was paid in cash and a note in the sum of $28,289.75, due in thirty days, was given for the balance. The cash was deposited in the Exchange National Bank of Colorado Springs, and checks were drawn against the account for the payment of the partnership debts. The $50,000 so deposited was insufficient to pay the outstanding claims against the partnership. The Adlers accordingly borrowed $9,000 from the First National Bank for the purpose of depositing it in the account in the Exchange National Bank to provide sufficient funds to pay all of the partnership claims. After the deposit of $50,000 in the Exchange National Bank and after the $9,000 had been borrowed, but before it could be deposited in the account in the Exchange National Bank, the Collector of Internal Revenue for Colorado levied a jeopardy assessment against the partnership for unpaid excise taxes in the amount of $19,129.10; a jeopardy assessment against Jacques Adler, individually, for unpaid excise taxes in the sum of $10,424.02; a jeopardy assessment against Jacques Adler, individually, for income taxes in the sum of $55,389.43; and a jeopardy assessment against May E. Adler for income taxes in the sum of $7,196.-56. A warrant of distraint was served on the Exchange National Bank, the First National Bank, and upon Martins. Some of the checks drawn by the partnership on the account in the Exchange National Bank for payment of partnership debts were outstanding at the time the warrant of distraint was served. To provide for the payment of these outstanding checks, the Adlers·arranged with Augusta B. Evans to place sufficient of her individual funds with the Exchange National Bank to be used in the payment of these outstanding checks. Under this arrangement, Mrs. Evans deposited $38,000 with the Exchange National Bank. The Adlers gave Mrs. Evans separate orders on the Exchange National Bank, on the First National Bank, and on Martins for the balance of any funds due the partnership, subject to the lien of the Collector.

On August 30, the Collector issued a second notice of levy of jeopardy assessment and served it on the banks and on Martins. On September 4, 1946, the Adlers brought this action against the Collector, the Director of Revenue for Colorado, the First National Bank, the Exchange National Bank, Martins, and Augusta B. Evans. The relief sought was that the Exchange National Bank pay into the registry of the court the sum of $31,366.36, or so much thereof as was in its hands; that the First National Bank pay into the court the sum of $9,126.11, or so much thereof as was in its hands; that Martins pay into the court the sum of $28,289.75, or so much thereof as was due and owing on its promissory note; that Martins also pay into the court any sums collected on accounts receivable of the partnership; and that the Collector pay into the court all sums received by him from the debtors of the partnership or from the plaintiffs individually.

The remedial relief which plaintiffs sought was that the $9,000 which plaintiffs had borrowed from the First National Bank be paid over to that bank as a credit on their note for that amount, and that the collateral given the bank to secure such note be returned to May E. Adler, subject only to the payment of the note, as her sole property. Of the funds which plaintiffs sought to have placed in the registry of the court, they asked the following accounting:

(a) That there be held in the registry of the court the sum of $20,555.01, until the

tax liability of the partnership, if any, due the Federal Government and the State of Colorado was determined;

(b) That out of the funds remaining in the registry of the court, Mrs. Evans be paid such sum of money as the court may find she had paid out because of checks issued by the plaintiffs as copartners;

(c) That the remaining portion of the funds be segregated at 40 per cent to May E. Adler and 60 per cent to Jacques Adler, and that such sums be retained in the registry of the court for the payment of income taxes found to be due against the plaintiffs;

(d) That the court direct that such sums of money as it determined the partnership, or either or both of the plaintiffs, may owe as sales tax to the State of Colorado, be deducted by way of marshaling all assets from the $28,289.75 which would be paid into the court by virtue of the promissory note executed to the plaintiffs by Martins;

(e) That after the above payments had been made, the balance to be paid over to the plaintiffs according to their respective ownership in such money.

The Exchange National Bank answered that it had paid the sum of $31,366.36 in its possession to the Collector, in response to the warrant of distraint. The First National Bank answered that it had paid the sum of $9,126.11 in its possession to the Collector, in response to the jeopardy assessment. Martins answered stating that it had paid into court $28,289.75, the amount due on its note and accounts receivable collected by it, and asked for an accounting of all of its dealings with the partnership and that the proceeds be used first to pay any sales tax due the State of Colorado. Mrs. Evans answered asking that the funds in the registry of the court and in the hands of the Collector be first applied to the payment of the partnership obligations before they be resorted to for the payment of individual obligations of Jacques Adler and May E. Adler, and that she be paid the sum of $37,846.47 from the moneys in the hands of the Collector. The Director of Revenue for the State of Colorado answered that by virtue of its laws, there was due the State of Colorado for sales taxes the sum of $1,638.43.

The Collector did not pay the amount in his possession into court as directed, but filed his response setting up his right to such funds. He also filed a motion to dismiss the complaint as to him. The trial court heard the motion and entered an order dismissing the complaint as to the Collector. Thereafter, an amended complaint was filed setting out substantially the same facts as were contained in the original complaint and praying that the court decree that the partnership funds in the hands of the Collector and in the registry of the court totaling $70,013.67, be first applied to the payment of partnership obligations; that no portion of the funds of either partner be subjected to the tax liability of the other partner; that the sales taxes due the State of Colorado be paid; that the Collector be ordered to pay to Mrs. Evans $37,846.47; that the Collector be required to mark the note of Martins paid; and that the remainder be paid to the Collector to be disposed of by him as he may be authorized.

Martins and Mrs. Evans filed amended answers and cross-petitions to the amended complaint. The Collector filed a motion to dismiss the amended complaint. The trial court entered an order dismissing the action holding that the court was without jurisdiction over the funds in the hands of the Collector, and that the Government's jeopardy assessment was superior to all claims and was a lien upon all funds until the amounts due the Government were adjusted and settled. This appeal followed.

The Collector's position is that this is an action to enjoin the collection of a tax and that the court was without jurisdiction to entertain such an action by reason of Section 3653 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3653, which forbids such actions. He cites a line of authorities including the case of Anniston Manufacturing Company v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143, in support of his contentions. These cases all sustain this principle of law. There is no need to analyze and discuss them. We are in full accord with these decisions, but the factual situation in this case does not bring it within the ambit of these decisions.

The reason why a taxpayer may not ordinarily challenge the validity of a tax claim asserted against him by the Government by an action to enjoin its collection is founded upon public policy and the necessity of prompt payment of such taxes in order to enable the Government to properly function.[1] In order, however, to protect the rights of the individual, Congress has provided a means for adjudicating such rights. Thus, Congress has provided that one challenging the legality of a tax may pay it under protest and then institute an action in a court of competent jurisdiction to recover the amount so paid. Ordinarily this is the taxpayer's sole remedy. It has long been recognized that this satisfies the constitutional requirements of due process.[2]

It is equally well setted that the Revenue laws relate only to taxpayers. No procedure is prescribed for a nontaxpayer where the Government seeks to levy on property belonging to him for the collection of another's tax, and no attempt has been made to annul the ordinary rights or remedies of a non-taxpayer in such cases. If the Government sought to levy on the property of A for a tax liability owing by B, A could not and would not be required to pay the tax under protest and then institute an action to recover the amount so paid. His remedy would be to go into a court of competent jurisdiction and enjoin the Government from proceeding against his property.[3] In Jones v. Kemp, 10 Cir., 144 F.2d 478, we held that a wife claiming a homestead interest in real estate, occupied as a homestead by her and her husband, could maintain an action to enjoin the Collector from selling her interest to satisfy a tax lien attaching to the husband's interest therein.

It must, of course, be conceded that the partnership, as such, was not liable for income taxes. The income from the partnership was the income of the several partners and tax liability on account of such income was the individual tax liability of each partner, to be collected, if necessary, by distraint from his own property. So it is also well established that the interest of one partner in partnership assets cannot be subjected to income tax liability of the other partner. In I. T. 3365, C. B. 1940–1, page 72, it was ruled that a partnership checking account in a bank was not subject to distraint to satisfy a tax assessed against an individual partner. See also Mertens Law of Federal Income Taxation, Volume 6, Paragraph 35.01.

One other principle must be kept clearly in mind before we go to a consideration of the precise question in this appeal. A partner's interest in the partnership property is his share of the surplus after all partnership debts have been paid,[4] and that surplus alone is liable for the separate debts of each partner. It, therefore, must follow that the partnership creditors' claims must first be satisfied out of the partnership assets before there was any distributable surplus to the partners to which the Government could look for the satisfaction of the individual tax liability of the partners, and even then it would be

[1] State Railroad Tax Cases, 92 U.S. 575, 613, 23 L.Ed. 663; Cheatham v. United States, 92 U.S. 85, 88, 89, 23 L. Ed. 561; Miller v. Standard Margarine Company, 284 U.S. 498, 509, 52 S.Ct. 260, 76 L.Ed. 422; Yakus v. United States, 321 U.S. 414, 441, 442, 64 S. Ct. 660, 88 L.Ed. 834.

[2] Dodge v. Osborn, Collector, 240 U. S. 118, 36 S.Ct. 275, 60 L.Ed. 557; Bailey v. George, Collector, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816; Graham v. Dupont, 262 U.S. 234, 43 S.Ct. 567, 67 L. Ed. 965; Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289.

[3] Long v. Rasmussen, D.C., 281 F. 236; Lion Coal Company v. Anderson, 10 Cir., 62 F.2d 325; Cannon v. Nicholas, 10 Cir., 80 F.2d 934; Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Regents v. Page, 5 Cir., 81 F.2d 577; Tomlinson v. Smith, 7 Cir., 128 F.2d 808; Excelsior Life Insurance Company v. Thomas, D. C., 49 F.Supp. 90.

[4] United States v. Hack, 33 U.S. 271, 275, 8 Pet. 271, 275, 8 L.Ed. 941; United States v. Kaufman, 267 U.S. 408, 412, 413, 45 S.Ct. 322, 69 L.Ed. 685; Estate of George H. Atkins, 2 T.C. 332; Cutler Hardware Company v. Hacker, 8 Cir., 238 F. 146; Commissioner of Internal Revenue v. Shapiro, 6 Cir., 125 F.2d 532, 535, 144 A.L.R. 349; Blodgett v. Silberman, 277 U.S. 1, 10, 48 S.Ct. 410, 72 L. Ed. 749.

limited in its attempt to collect the income taxes due from each partner to his interest in the remaining net proceeds of the partnership.

■ What we have said as to income taxes does not apply to the Government's claim for excise taxes. These arose by virtue of partnership sales and as to them the Government would have a claim against partnership assets, and, of course, could perfect a first and prior lien thereto. We do not understand that any of the parties contest the right of the Government to look at the partnership assets for the satisfaction of its excise tax claim.

■ Mrs. Evans by depositing $38,000 in the Exchange National Bank for the purpose of paying the general creditors of the partnership, and by accepting orders on that bank, the First National Bank and Martins was subrogated to the rights of the general creditors whose claims she thus paid.[5] She, therefore, had an interest in this property which she had a right to protect. Not only that, but Mrs. Adler had a 40 per cent interest in the net proceeds of the partnership, if any, which she had a right to protect against an attempt of the Government to sequester for the payment of an income tax due from her husband, and so likewise he had a right to protect his 60 per cent net interest in the assets, if any, from the attempt of the Government to subject the same to the satisfaction of May E. Adler's individual income tax liability.

■ Whether the debt due Mrs. Evans, as subrogee of the general creditors, is a liability of the partnership that takes precedence over the lien of the Government for these income taxes is a question to be resolved on the merits by the trial court. We merely hold that as to the interest of Adler and his wife in the net proceeds of the partnership, if any, and the interest of Mrs. Evans in the assets of the partnership, as subrogee, they had such an interest in the property as would permit them to maintain an action to enjoin the Government from selling the same in violation of their rights therein. As to such property, they were not taxpayers and were, therefore, not subject to the applicable statutory provisions which require the taxpayer to pay such tax under protest and then to sue to recover. They stand in the relationship of third parties claiming an interest in property which the Government asserts a right to sell to satisfy an income tax liability of another, and could, therefore, maintain this action to establish their rights, if any, therein. The court erred in sustaining the motion to dismiss the action. It should have overruled the motion and should have determined the cause upon the issues.

The court's conclusion that the Government's jeopardy assessments were superior to all claims and were a lien upon all funds until the amount due the Government was adjusted and settled is erroneous and is, therefore, set aside. The question of claims of ownership, the priority of liens, or who has liens on the assets in controversy is an issue which must be determined when the case is heard upon the merits.

■ One of the grounds in both motions by the Collector to dismiss was that the United States was the real party in interest and had not consented to be sued. The Court did not pass upon this contention in sustaining the motion to dismiss, but since the judgment must be reversed and the cause be remanded for further proceedings, this question should be determined. We agree with the Collector that the United States is the real party in interest. The facts in this case are indistinguishable in principle from those in Jones v. Tower Production Company, 10 Cir., 138 F.2d 675. There the Collector perfected a lien against an oil and gas lease for income taxes and issued a distraint warrant. Third parties claiming an interest in the lease filed an injunction action against the Collector. We held that the United States was the real party in interest and that by the Act of December 2, 1942, 56 Stat. 1026, 28 U.S.C.A. § 901, the Government had consented to be sued. So here also the Collector has proceeded by a warrant of distraint against the property and funds that are claimed by third parties. The substance of the action is to determine

---

[5] Ingram v. Jones, 10 Cir., 47 F.2d 135, 139; 60 C.J., par. 113, page 807, et seq.

the title and interest in these funds and the right of the United States under a tax lien asserted against the same. Upon these issues, the United States was a necessary party, and under the statute cited in the Tower Production Company case, the United States has consented to be sued.

The judgment is reversed and the cause is remanded with instructions to permit the pleadings to be recast, making the United States a party defendant, and then proceed to a determination of the case on the merits in conformity with the views expressed herein.