W. S. BUSHMIAER and Russell L. Myers, Co-Executors of the Estate of J. W. Myers, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1183.

United States District Court
W. D. Arkansas, Fort Smith Division.

Nov. 9, 1956.

See also 131 F.Supp. 589.

**330**

[black redaction bar]

G. C. Hardin, of Hardin, Barton, Hardin & Garner, Ft. Smith, Ark., William H. Bowen, of Mehaffy, Smith & Williams, Little Rock, Ark., for plaintiffs.

Charles W. Atkinson, U. S. Atty., Ft. Smith, Ark., Lester L. Gibson, Sp. Asst. to Atty. Gen. (Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, William A. Miner, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendant.

JOHN E. MILLER, District Judge.

On October 9, 1956, the plaintiffs filed their motion for preliminary injunction and temporary restraining order, restraining the defendant and its agents from proceeding to sell the property comprising the estate of plaintiffs' decedent, until a trial of the question of liability is consummated during the January, 1957, jury calendar in the Fort Smith Division.

Upon the presentation of the motion, the Court issued a temporary restraining order, restraining the defendant and various named collection agents of defendant from "proceeding to take inventory of the estate of J. W. Myers, deceased, giving notice of the sale of the said estate and selling the assets comprising the estate as it is proposed they do to satisfy the assessment of additional income tax, penalties and interest assessed against the estate for 1942 and 1943".

The temporary restraining order would have expired by its own terms on October 20, 1956, except that on October 12 the Court extended it to October 31, 1956, and set for hearing on October 31, 1956, at 9:30 a. m., the plaintiffs' motion for preliminary injunction.

The motion for preliminary injunction came on for hearing on the date set, at which time the plaintiffs proceeded to introduce ore tenus testimony and certain exhibits thereto in support of their motion.

The defendant did not introduce any testimony, but did cross-examine the witnesses produced by the plaintiffs.

It is the contention of the defendant that:

1. The Court is without authority to hear plaintiffs' motion or grant the relief requested therein on the ground that the United States, as a sovereign, is immune from suit save as it consents to be sued and not otherwise, and that the Congress has not, by legislative enactment, granted authority for the maintenance of an action on motion for an injunction.

2. That all persons sought to be enjoined are not properly before the Court in that the motion seeks to enjoin the United States and certain agents for collection of taxes named in the motion from proceeding to sell the property until the trial of the principal case is completed; that the United States is properly before the Court, but if the Court should issue the injunction as prayed for in the motion, that it would be a denial to the other persons named in the motion of an opportunity to be heard in their own behalf.

3. That the motion for a preliminary injunction is in the nature of a "suit for the purpose of restraining the * * * collection of a tax * * * and is specifically prohibited by the provisions of Section 7421(a) of the Internal Revenue Code of 1954".

4. That under the mandate of the United States Court of Appeals for the Eighth Circuit, issued in the case of Bushmiaer v. United States, 230 F.2d 146, 152, the Director of Internal Revenue has been authorized to proceed to collect the taxes "without let or hindrance".

The plaintiffs contend:

1. That Section 7421(a) of the 1954 Internal Revenue Code does not bar equitable relief under the facts in the instant case, and the facts and the applicable decisions make it clear "that in the sound discretion of this Court the

extraordinary remedy of injunctive relief is available to these taxpayers".

2. That the Court is invested with jurisdiction to consider a request for an injunction against a Collector of Internal Revenue individually, and that in such a suit the defendant here, the United States of America, is in law the real party in interest.

It is clear that the United States as sovereign is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.

Section 7421(a) of the Internal Revenue Code of 1954, 26 U.S.C.A., provides:

"(a) Tax.—Except as provided in sections 6212(a) and (c), and 6213 (a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

The exceptions in the above statute are not applicable to the question before the Court.

However, the United States Supreme Court, in Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 52 S.Ct. 260, 264, 76 L.Ed. 422, in commenting upon R.S. § 3224, which at that time provided " 'No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court' ", held, in harmony with the rules generally followed in courts of equity, that a suit will lie to restrain the collection of an illegal tax when exceptional and extraordinary circumstances exist.

Beginning with the second sentence on page 509 of 284 U.S., on page 263 of 52 S.Ct., the court said:

"The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector. Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Hannewinkle v. [City of] Georgetown, 15 Wall. 547, 21 L.Ed. 231; State Railroad Tax Cases, 92 U.S. 575, 614, 23 L.Ed. 663. Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. Cumberland Telephone & Telegraph Co. v. Kelly, 6 Cir., 160 F. 316, 321. Baker v. Baker, 13 Cal. 87, 95. Bradley v. People, 8 Colo. 599, 604, 9 P. 783; 2 Sutherland, 2d Lewis ed., § 454. The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclosing that purpose to warrant the inference that Congress intended to abrogate that salutary and well-established rule. This court has given effect to Section 3224 in a number of cases. Snyder v. Marks, 109 U.S. 189, 191, 3 S.Ct. 157, 27 L.Ed. 901; Dodge v. Osborn, 240 U.S. 118, 121, 36 S.Ct. 275, 60 L.Ed. 557; Dodge v. Brady, 240 U.S. 122, 36 S.Ct. 277, 60 L.Ed. 560. It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional circumstances render its provisions inapplicable. Hill v. Wallace, 259 U.S. 44, 62, 42 S.Ct. 453, 66 L.Ed. 822; Dodge v. Osborn, supra, at page 121 of 240 U.S., at

page 276 of 36 S.Ct.; Dodge v. Brady, supra. Cf. Graham v. Du Pont, 262 U.S. 234, 257, 43 S.Ct. 567, 67 L.Ed. 965; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493."

None of the tax collecting officers of the United States are parties to this proceeding. They are named in the motion for the preliminary injunction, but there has been no service of process on any of the officials, and the only defendant before the Court is the United States, and, as heretofore stated, there does not appear to be any legislative enactment by the Congress specifically authorizing a suit for an injunction against the United States of America.

The Supreme Court, in the case of Moore Ice Cream Co. v. Rose, 289 U.S. 373, on page 382, 53 S.Ct. 620, at page 623, 77 L.Ed. 1265, speaking through Mr. Justice Cardozo, beginning at the second paragraph, said:

"A suit against a collector who has collected a tax in the fulfilment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. The Collector, supra, 5 Wall. at page 731, 18 L.Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now. United States v. Emery, supra [237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825]; Ex parte Bakelite Corp., 279 U.S. 438, 452, 49 S. Ct. 411, 73 L.Ed. 789; Act of February 24, 1855, c. 122, 10 Stat. 612, §§ 1 and 9, Judicial Code, § 145, 28 U.S.C., § 250; Judicial Code, § 24 (20), 28 U.S.C. § 41(20), 28 U.S. C.A. § 41(20). They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

[2] The defendant, United States of America, can act only through its agents, and if an agent's actions are restrained, the sovereign itself may, through him, be restrained. Ordinarily, if a suit is brought against an officer of a sovereign, in which the relief sought from him is not compensation for an alleged wrong, but rather the prevention or discontinuance, in rem, of the wrong, the compulsion which the court is asked to impose may be compulsion against a sovereign, even though the sovereign is not a named party to the proceeding. This Court is not unmindful that the Supreme Court in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, on page 688, 69 S.Ct. 1457, 93 L.Ed. 1628, held that such a suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction.

The Court in the instant case is of the opinion that the relief sought by plaintiffs in their motion cannot be regarded as an effort to compel the defendant, United States of America, to ultimately forego any right granted it by the law and which may be legally obtained by the defendant through the duly authorized actions of its officers.

All of the cases cited by learned counsel for the defendant, in which are involved requests for injunctions to restrain the assessment or collection of a tax, are cases in which the court was required to determine, not only the validity of the asserted tax, but also the validity of the procedure adopted by the United States, acting through its officers. The attention of the Court has not been called to any case similar to the one now before the Court. The instant case, when compared to other adjudicated cas-

es which have been called to the attention of the Court, and others which the Court has discovered by an independent investigation, is, to say the least, novel, unusual, and may be considered as extraordinary.

The facts as shown by the record in the principal case and stipulation of the parties are that the plaintiffs' decedent was engaged in business under the name of Myers Commission Company. He filed income tax returns for each of the calendar years 1942 and 1943 in due time, and paid the tax as shown by the returns. Following the filing of the returns by the taxpayer, the Collector of Internal Revenue made an investigation and prepared amended returns for each of the years, which were executed by the taxpayer. The original return as filed by the taxpayer for the calendar year 1942 disclosed a tax liability of $5,294.55. The amended return for that year disclosed a tax liability of $7,909.97.

The original return for the calendar year 1943 showed a tax liability of $443.31, while the amended tax return for that year disclosed a tax liability of $9,660.85. These amended returns were filed on July 7, 1945.

The taxpayer died August 15, 1951. On October 1, 1954, slightly more than three years after the death of the taxpayer, and approximately nine years from the date the amended returns were filed for the years 1942 and 1943, the Commissioner of Internal Revenue wrote the plaintiffs informing them of the additional tax, which the defendant claimed for the years involved. In accordance with the notice of the claimed deficiency, the Commissioner, through his agents, made an assessment of the additional tax and penalties on November 23, 1954, against the estate of the decedent taxpayer, J. W. Myers.

The total amount of the additional assessment against decedent's estate is $208,975.32, and liens were filed in Crawford County, the County of the location of the decedent's business, on September 26, 1954.

On December 16, 1954, the plaintiffs, as executors of the estate of the decedent, made a payment of $2,500, in partial satisfaction of the assessed tax liability for each of the years 1942 and 1943. See, Bushmiaer v. United States, 8 Cir., 230 F.2d 146. On December 20, following the payment of the total of $5,000, the plaintiffs filed claims for refund and, among other reasons assigned in support of the claims for refund, stated: "That the assessment and collection of the alleged tax liability is barred by the Statute of Limitations".

The claims for refund were denied, and on March 15, 1955, plaintiffs filed a suit against the defendant, United States of America, to recover the payments heretofore referred to.

On May 17, 1956, the defendant filed its answer denying the allegations in the complaint, and alleging a counterclaim against the plaintiffs, and asking judgment on its counterclaim for the amount of the assessment, plus fraud penalties.

On July 5, 1956, the defendant filed an amended answer and counterclaim, in which again it denied that the assessment was illegal or unlawfully made, and asked for a judgment against plaintiffs for the amount of the assessment and penalties.

Upon the issues joined by the pleadings, the case proceeded to trial to a jury, which resulted in a mistrial because of the inability of the jury to arrive at a verdict.

The trial on the merits ended in this Court on September 28, 1956. Prior to the trial the plaintiffs, at the request of the collecting officers of the defendant, executed a custodian agreement, dated September 21, 1956, in which they became custodians of the assets of the decedent taxpayer's estate.

The motion of plaintiffs alleges that the defendant, through its agents, will proceed to advertise for sale and to sell forthwith the property and business of the decedent, and that such a sale would destroy the going concern value of the Myers Commission Company, a fresh

fruit and vegetable wholesale and shipping business, situated in Van Buren, Arkansas, which business is a major item among the properties comprising the estate, and would result in the loss of all earnings and receipts which otherwise would accrue to the said estate from the date of sale until judgment is entered on the trial of this cause in January, 1957; that the value of all the property owned by the estate is exceeded by the amount of the tax, penalty, and interest assessed by the defendant against the estate for 1942 and 1943; that the proposed sale in these circumstances would result in irreparable damage to plaintiffs in that there is no adequate remedy at law for recovery of the loss of the going concern value and good will of the commission business or the monetary loss in prospective earnings, which earnings the business will otherwise realize if the sale is not presently consummated; that the defendant is amply protected by its lien upon all property and rights to property comprising the estate, and further has by the summary processes afforded it by statute actually seized the property embraced within the estate and has appointed Russell L. Myers (one of the plaintiffs) custodian of the said property; the estate is not comprised of wasting assets so that it appears that there is little likelihood of the immediate depreciation of the assets. The executors of the estate and Russell L. Myers, its present custodian by contract, have handled the affairs of the estate with reasonable care.

As heretofore stated, upon the filing of the motion a temporary restraining order was entered.

In due time, the defendant filed its answer or response to the motion in which it alleged that the motion is in the nature of a suit for the purpose of restraining the collection of taxes, and is specifically prohibited by law; that "in preparing to sell and in selling plaintiffs' assets, the Director and his agents are here acting, not only under authority of Section 6331 of the Internal Revenue Code of 1954, but also under the clear and un-

equivocal mandate of the Eighth Circuit Court of Appeals in this exact case"; that this Court is without jurisdiction of the motion for the reason that the United States has not consented to be sued in an action for injunction".

In support of the motion, the plaintiffs introduced the ore tenus testimony of witnesses, from which the Court finds that at the time of the death of the taxpayer, J. W. Myers, that he was the owner of 84.4 percent of the Myers Commission Company. His son, Russell L. Myers, one of the plaintiffs and executors of the estate of J. W. Myers, deceased, owned 15.6 percent of the company.

Statements of an accountant filed as exhibits to the testimony of Russell L. Myers disclose that the estate, exclusive of the Myers Commission Company, sustained a loss of $400.07 for the year ending March 31, 1954; a loss of $4,865.77 for the year ending March 31, 1955; and a loss of $2,557.23 for the year ending March 31, 1956.

The operation of the Myers Commission Company for the year ending March 31, 1954, showed a net income of $9,282.15; for the year ending March 31, 1955, a loss of $29,627.98; and for the year ending March 31, 1956, there was a profit of $4,228.70.

The Commission Company is engaged in growing, harvesting, and selling vegetables, and has arrangements made with several farmers whereby the planting, growing, and harvesting is done under a joint account. For the present season, the Commission Company has obligated itself to expend for seed, fertilizer, baskets, and other expenses the sum of approximately $33,000, in the operation of the joint accounts. One joint account is in the State of Texas where approximately 2,000 acres are to be planted to vegetables, mostly spinach. The operation in Louisiana covers 200 acres, and in Mississippi, 500 acres. There are several hundred acres being operated in the immediate area of Van Buren under the same arrangement. These arrangements are the customary ones existing between commission com-

panies engaged in a similar business, and often result in considerable income to the company.

There was no testimony tending to show that there had been any substantial reduction in the salable assets of either the Commission Company or the estate, notwithstanding the severe drouth conditions that have existed for the last three years.

The testimony of two witnesses, Messrs. Boyce W. Wofford and Mike Meyer, discloses that a business, such as the Commission Company, could not be sold at this season of the year for a sum approximating its real value. Likewise, the sale price of farm lands at this particular time would not represent the true value because of the conditions discussed by the witnesses. These two men are men of great experience in farming and in the produce business. Considering all of the testimony introduced by plaintiffs, the Court is convinced that the sole property of the deceased and the interest of his estate in the Commission Company cannot be sold at this time without great loss, not only to the estate, but also to the defendant if it is finally determined that the estate is indebted to the defendant for taxes. Likewise, the testimony discloses that, in all probability, if it becomes necessary to sell the property, that it can be sold to a much greater advantage to all parties concerned during the early months of 1957, when the farms will be in production and the business of the Commission Company will be such as to attract purchasers.

In addition to the testimony of Messrs. Wofford and Meyer, Mr. Jim Hales, a partner in the Johnson-Hales Livestock Commission Company, testified that the cattle belonging to the estate, some sixty head, would probably sell at the present time for five or six cents per pound, while the same cattle would more than likely sell next April or May for as much as ten or eleven cents per pound. At present the cattle will average about 700 pounds, and the loss per head would be $35 to $40, or a total loss of $1,900 to $2,400, on the sale of the cattle alone.

Thus, there can be no doubt that special and extraordinary circumstances exist which would justify a court of equity to enjoin the immediate sale of the assets to prevent a substantial loss, not only to the plaintiffs but to the defendant as well.

This leaves for determination the question of whether the Court has the jurisdiction to postpone the threatened sale of the assets of the estate until the trial of the case on its merits.

In Larson v. Domestic & Foreign Commerce Corp., supra, at page 704 of 337 U.S., at page 1468 of 69 S.Ct., the court, in discussing the rule that the interference of the courts with the performance of the ordinary duties of the executive departments of the Government would be productive of nothing but mischief, said:

"There are limits, of course. Under our constitutional system, certain rights are protected against governmental action and, if such rights are infringed by the actions of officers of the Government, it is proper that the courts have the power to grant relief against those actions."

Section 6331(a) of Title 26 U.S.C.A., provides:

"If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax * * * by levy upon all property and rights to property * * * belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."

Subsection (b) of the same section provides that the term "levy" includes the power of distraint and seizure by any means, and that the property or rights to property, whether tangible or intangible, may be sold.

Section 6501(a) of Title 26 U.S.C.A., provides that the tax "shall be assessed within 3 years after the return was filed".

Section 6502(a) of Title 26 U.S.C.A., provides:

"Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within 6 years after the assessment of the tax, or prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period."

The assessment in this case was made by the agents of the defendant on November 23, 1954, and a lien was filed on November 26, 1954, upon all property and rights to property belonging to the estate of the taxpayer. Under the statute, agents of the defendant had no right to make the assessment or to impose a lien upon the property of the taxpayer unless the statutory limitation did not apply because of the alleged fraud of the taxpayer in making his income tax returns for the years 1942 and 1943. Section 7422 of Title 26 U.S.C.A., outlines the procedure required to be followed by persons, such as the plaintiffs in this case, if they desire to prosecute a suit to recover taxes which they allege were illegally assessed and collected.

Subsection (e) of the section also outlines the procedure that the Government must follow when the assessment has been made after the statutory limitation has run. The subsection is as follows:

" * * * If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax."

In the instant case, the defendant, United States of America, has availed itself of its right to file a counterclaim, and has assumed the burden of establishing fraud on the part of the taxpayer in the making of his income tax returns for the years involved. Unless the Government establishes fraud on the part of the taxpayer by clear, convincing, and cogent testimony, and unless the Court finds that the taxpayer was guilty of fraud, the assessment and the consequent lien are void. Here the assessment shows that it is barred by the Statute of Limitations unless the Government removes the bar in the manner provided by law.

The Court is not required in this proceeding to determine the question of the ultimate validity of the assessment. The plaintiffs only ask the Court to hold the property of the taxpayer intact until the validity of the assessment and lien can be determined in the suit now before the Court, and in which the defendant has filed its counterclaim in an effort to establish the validity of the assessment and lien.

Since the liability of the plaintiffs is not prima facie or presumptive, they cannot be considered as persons liable to pay such an assessment until its validity is established by trial on the merits of the issues joined in the main case.

In the trial of the main case in September, 1956, the defendant apparently failed to establish fraud since, as heretofore stated, the jury was unable to determine the issues between the parties. The United States has voluntarily submitted itself to the jurisdiction of this Court, realizing as it does that the assessment and lien are void unless fraud is established.

The defendant having submitted itself to the jurisdiction of this Court, the Court is of the opinion that it has ancillary jurisdiction in this particular proceeding to protect these plaintiffs in their capacity as executors of the estate of the taxpayer against such levy and sale until the defendant establishes that they are liable to pay the tax assessed.

Section 1651 of Title 28 U.S.C.A., provides that a court may issue all writs necessary or appropriate in aid of its jurisdiction, and agreeable to the usages and principles of law. The record here discloses that it is necessary for this Court to protect its jurisdiction to determine the liability of the plaintiffs, and, in order to do this, justice demands that the sale of the assets of the estate should be postponed until liability for the tax assessed is established.

The defendant contends that the decision of the Court of Appeals in this case, 8 Cir., 230 F.2d 146, 152, establishes its right to make the sale. It is true that the Court of Appeals, upon the record then before it, stated that the Government would not be prevented from proceeding to collect "that part of the assessed taxes not sought to be recovered". Since that time, however, the defendant has filed its counterclaim putting in issue the whole controversy. In addition, the evidence introduced at the hearing on October 31, 1956, disclosed that the plaintiff, Russell L. Myers, owns 15.6 percent of the Myers Commission Company, and further that a sale of the Commission Company and other assets of the estate would result in irreparable damage to the estate. In view of these developments, the decision of the Court of Appeals does not prevent this Court from entering an order which is necessary to protect its jurisdiction.

Moreover, the fact that the Myers Commission Company was a partnership raises a very serious question as to the right of defendant to sell the Myers Commission Company. It has been held that a district court has the power to restrain a District Director from further proceeding on a tax levy pending a hearing on the question of ownership of the property. Ersa, Inc., v. Dudley, 3 Cir., 234 F.2d 178; Raffaele v. Granger, 3 Cir., 196 F.2d 620.

It has further been held that the interest of one partner in partnership assets cannot be subjected to income tax liability of the other partner. Adler v. Nicholas, 10 Cir., 166 F.2d 674. In the Adler case the court held that the United States was the real party in interest and that the Government had consented to be sued. Adler v. Nicholas, supra, at page 679 of 166 F.2d; 28 U.S.C.A. § 2410.

Under the Arkansas law a partner's right in specific partnership property is not subject to attachment or execution for a personal debt of the partner. Sec. 65–125, Ark.Stats.1947; Arnold Barber & Beauty Supply Co. v. Provance, 221 Ark. 385, 253 S.W.2d 367.

These facts, together with the other matters heretofore discussed, lead the Court to conclude and to hold that an order should be entered postponing the sale of the property of the estate of the deceased taxpayer until the validity of the assessment and subsequent levy is determined.

When the jury failed to agree upon a verdict at the trial of the case in September, 1956, the Court immediately set the case for another trial on its merits during the regular January, 1957, term, and the main case is scheduled for trial during that term. At the hearing upon the motion of the plaintiffs, counsel for the defendant suggested that should the Court postpone the sale of the property of the estate, that a bond should be required to protect the defendant against loss occasioned by the postponement In accordance with the request the order will provide that the plaintiffs shall execute and file a good and sufficient bond in the sum of $5,000 to secure the payment of such costs and damages as may be incurred or suffered by the defendant, in the event it is determined that the defendant has been wrongfully enjoined or restrained.