**W. S. BUSHMIAER and Russell L. Myers, Co-Executors of the Estate of J. W. Myers, Deceased, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1183.**

United States District Court
W. D. Arkansas, Fort Smith Division.
May 27, 1955.

Mehaffy, Smith & Williams, Little Rock, Ark., Hardin, Barton, Hardin & Garner, Fort Smith, Ark., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Lester L. Gibson, Sp. Assts. to Atty. Gen., Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., for defendant.

JOHN E. MILLER, District Judge.

For decision is the motion filed by the defendant on May 16, 1955, to dismiss the complaint of plaintiffs.

The complaint was filed March 15, 1955. Plaintiffs are the co-executors of the estate of J. W. Myers, deceased, and are citizens of the State of Arkansas and reside in the Fort Smith Division of the Western District. Jurisdiction is invoked on the ground that the action arises under the laws of the United States pertaining to the internal revenue.

Paragraphs 3, 4, 5 and 6 of the complaint are as follows:

"3.

"After having determined, as is recorded by a registered deficiency notice dated October 1, 1954, that the Estate of J. W. Myers, deceased, allegedly owed additional income taxes for the years 1942 and 1943, agents of the defendant made an assessment on or about November 23, 1954 of the additional tax asserted in the deficiency notice against the said Estate.

"4.

'On or about December 16, 1954, the Estate of J. W. Myers, deceased, by its checks numbered 861 and 862 made payments of $2,500.00 in partial satisfaction of the assessed tax liability for each of the years 1942 and 1943.

"5.

"On or about December 20, 1954, claims for refund, on Treasury Form 843, for the $2,500.00 of incomes taxes paid for each of the years 1942 and 1943 were duly filed with agents of the defendant by the Estate of J. W. Myers, deceased.

"6.

"A registered notice of disallowance of the claims for refund referred to in Paragraph 5 hereof was mailed to the Estate of J. W. Myers, deceased, on or about March 9, 1955 and no part of the additional taxes paid for 1942 and 1943 has been refunded to the Estate."

In Paragraph 8 of Count I it is alleged that the defendant illegally and erroneously determined and assessed the additional income tax liability asserted for 1942 against the estate of J. W. Myers, deceased, and illegally and erroneously collected $2,500 of taxes paid by the estate for that year.

Paragraph 10 of Count II of the complaint is identical with Paragraph 8 of Count I except it deals with the tax liability for the year 1943.

Plaintiffs pray that they recover a total of $5,000 being claims for refund for $2,500 of income taxes paid for

each of the years 1942 and 1943. The defendant states the question presented in the following language:

"Should the plaintiffs' suit be dismissed for failure to show jurisdiction in this court on the ground that the complaint on its face indicates taxpayer has not paid the full tax due for either one of the years involved?"

It will be borne in mind that Paragraph 4 of the complaint discloses that the payments sought to be recovered were made "in partial satisfaction of the assessed tax liability for each of the years 1942 and 1943."

On their brief filed herein, the plaintiffs state:

"On October 1, 1954, * * * the government determined that a deficiency of income taxes existed for the years 1942 and 1943 totaling $91,415.65, with fraud penalties asserted of $45,696.83."

"Because the estate was clearly not in a position to pay the proposed tax liability, the personal representatives were threatened constantly with the probability of jeopardy assessment of the asserted tax and the immediate imposition of a tax lien against all the property and rights to property of the estate. Thus, there would be lost to the estate the usual advantage gained in petitioning the Tax Court of the United States for a hearing on the deficiency determination of the government. Such a hearing would ordinarily hold in abeyance the assessment of the tax and the filing of the liens until final decision of that Court. Secondly, the testing of the validity of the asserted liability in the Tax Court would not afford the estate the right to a jury trial and because the Tax Court had on October 1, 1954, already scheduled a trial calendar for Arkansas to begin December 13, 1954, it was obvious that another year and a half or two years would pass before a hearing on the correctness of this asserted tax liability could be had before that Court in the State of Arkansas. Thus, the prospect of trying to operate a fresh fruit and vegetable market business for such an extended period of time under a tax lien of the United States government, with all of the disabilities inherent in such a situation, was unthinkable for the personal representatives of the estate. The only alternative to simply closing shop and relinquishing everything to the government 'in partial satisfaction of the asserted tax liability was to pay as much as possible and file claim, then suit, for refund of the taxes paid."

A summary of the argument of the defendant in support of the motion to dismiss is as follows:

"The District Court does not have jurisdiction of this suit because the entire tax assessed for either of the years involved has not been paid. The statute conferring jurisdiction on district courts to adjudicate internal revenue actions contemplates that the entire tax as assessed by the Commissioner for the period in question must be paid before a suit for refund may be instituted. This is in accordance with the system of corrective justice that Congress has adopted for the collection of taxes and settlement of tax disputes. The basic policy in this system is that the taxes must be paid first and litigation in the courts must come later. If one would contest the validity of tax before payment, he must take his litigation to the Tax Court."

The argument of the plaintiffs in opposition to the motion to dismiss is summarized by their attorneys as follows:

"The language of Section 1346(a) (1) of Title 28, United States Code, plainly recites, and the cases confirm, that this court has jurisdiction of this suit if (a) the action is for the recovery of 'any internal

revenue tax' and (b) it is alleged that said tax was erroneously or illegally assessed or collected. To require, as defendant would have this court do, that *all* taxes assessed be paid before suit could be brought, would be to distort the plain language of a rather simply worded statute in a manner neither contemplated by the Congress nor allowed by the canons of legislative construction."

By the enactment of Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C.A. and its predecessors, the United States waived its sovereign immunity from suit. The permission to sue is conditioned on the filing of a claim for refund or credit with the Secretary of the Treasury or his delegate according to the provisions of law in that regard and the regulations of the Secretary or his delegate established in pursuance thereof. United States v. Michel, 282 U.S. 656–658, 51 S.Ct. 284, 75 L.Ed. 598. It will be noted that the claim for refund or credit may be for the recovery of "any internal revenue tax" alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority.

In Cheatham v. United States, 92 U.S. 85, on page 88, 23 L.Ed. 561, the court, in speaking of the remedies that a taxpayer has when he thinks the Commissioner of Internal Revenue has erroneously assessed taxes, said:

"If dissatisfied with his decision, on paying the tax, the party can sue the collector; and, if the money was wrongfully exacted, the courts will give him relief by a judgment, which the United States pledges herself to pay.

"It will be readily conceded, from what we have here stated, that the government has a right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues."

From time to time Congress has enacted various statutes providing for and regulating the collection of taxes. The system enacted by Congress is intended to be complete and is in accordance with the experience of governments in general. The statutes may seem harsh and the remedies for recovering taxes illegally exacted may seem burdensome but, as stated in Cheatham v. United States, supra:

"All governments, in all times, have found it necessary to adopt stringent measures for the collection of taxes, and to be rigid in the enforcement of them."

The amounts paid by the plaintiffs as representatives of the estate of the deceased taxpayer are a comparatively small sum compared to the total amount assessed by the United States, and they seek to maintain this suit and recover such amounts without paying the entire tax, upon the allegation that the taxes and penalty were illegally and erroneously determined and assessed. Thus, the question to be determined is whether a taxpayer, when faced with a deficiency assessment of taxes and penalty, may make a token payment and then sue in a United States District Court to recover the same and by so doing vitiate the entire assessment and tax, and at the same time compel the government to file a counterclaim in the taxpayer's suit. The statute provides that, if the taxpayer does not file a petition in the Tax Court for a redetermination of the asserted deficiency, a counterclaim may be filed by the government, and that the taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade the tax. Section 7422(e), The Internal Revenue Code of 1954.

In Friebele v. United States, D.C.N.J., 20 F.Supp. 492, the taxpayer paid only a part of a stamp tax which had been assessed upon the transfer of some taxable securities and sued for the recovery of the amount paid. The government

moved to dismiss on the ground that the court did not have jurisdiction inasmuch as the government system of taxation makes it imperative that the taxpayer be required to pay his entire liability first and litigate later. The court recognized the strength of the contention of the government but held that, since there was a separate tax due on each sale or transfer of the securities and the amount paid was the full amount of the tax due on the particular transaction, the government's contention should be denied, but at page 493 stated:

"Income taxes and estate taxes flow from calculations involving complicated considerations of credits, exemptions, etc. The resulting tax has been influenced by and reflects these considerations. They are not naturally separable as in the case of the stamp tax. It is a wise law that governs their prepayment before suit can be brought. Otherwise, the power of collection of taxes would be continuously impeded and rendered practically useless."

The deficiencies assessed in the instant case are not separable as in the case of the stamp tax involved in the foregoing case.

In Suhr v. United States, 3 Cir., 18 F.2d 81, 83, the plaintiff in his return for the calendar year 1917 erroneously included his stock dividends. Following the filing of the return, the Supreme Court decided that such dividends were not taxable and he filed a claim for refund of $3,500. When the claim for refund was filed, the Commissioner ordered an examination of the plaintiff's books and accounts and, as a result, an additional tax of $9,957.68, after giving plaintiff credit for the stock dividends, was levied. The plaintiff refused to pay and appealed to the United States Board of Tax Appeals. While the appeal was pending before the Board of Tax Appeals he filed the suit. In holding that the District Court did not have jurisdiction, the court said:

"None of the various tax acts provide for recourse to the courts by a taxpayer until he has failed to get relief from the proper administrative body or has paid all the taxes assessed against him. The payment of a part does not confer jurisdiction upon the courts. Blair v. U. S. ex rel. Birkenstock, supra [271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983]. The fact that the plaintiff had paid what he thought was all his taxes before the questions of stock dividends and deficiency arose, does not confer upon him the right, after they had arisen and appeal had been taken to the board, to ignore the appeal and proceed to recover in the District Court, just as though he had paid the full amount demanded and there was no question about a deficiency still due from him. There is no provision for refund to the taxpayer of any excess payment of any installment or part of his tax, if the whole tax for the year has not been paid."

The Board of Tax Appeals (now the Tax Court) was established in 1924. A statement of the reasons for the creation of the Board is found in House Report No. 179, 68th Congress, First Session. Inter alia, the committee handling the legislation said:

"The committee recommends the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of an additional assessment of income, excess profits, war profits or estate taxes. Although a taxpayer may, after payment of his taxes, bring suit for the recovery thereof and thus secure a judicial determination of the questions involved, he cannot, in view of Section 3224 of the Revised Statutes (now Section 7421, Internal Revenue Code of 1954) which prohibits suit to enjoin the collection of taxes, secure such a determination prior to the payment of the tax. The right of appeal after payment of the tax is an incomplete remedy, and does little to remove the hardship occasioned by an in-

correct assessment. The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in non-liquid assets, or spent sometimes forces taxpayers into bankruptcy and often causes great financial hardship and sacrifice."

The Congress, by the enactment of the statute, provided the remedy whereby the taxpayer could have the assessment reviewed and redetermined prior to the payment, and that remedy is still afforded a taxpayer by the law.

The Supreme Court in the case of Old Colony Trust Company v. Commissioner of Revenue, 279 U.S. 716, on page 721, 49 S.Ct. 499, on page 501, 73 L.Ed. 918, on June 3, 1929, said:

"The Board of Tax Appeals, established by section 900 of the Revenue Act of 1924, Tit. 9, c. 234, 43 Stat. 253, 336, was created by Congress to provide taxpayers an opportunity to secure an independent review of the Commissioner of Internal Revenue's determination of additional income and estate taxes by the Board in advance of their paying the tax found by the Commissioner to be due. Before the act of 1924, the taxpayer could only contest the Commissioner's determination of the amount of the tax after its payment. The Board's duty under the act of 1924 was to hear, consider, and decide whether deficiencies reported by the Commissioner were right."

In Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, the court thoroughly considered the procedures applicable in tax cases and explained that a taxpayer has two choices, (1) to contest the assessment before payment, or (2) to allow the assessment to stand, pay the tax and sue for the alleged overpayment.

Sections 6213 and 6214, Internal Revenue Code of 1954, set forth the procedure to be followed by the taxpayer when he has received notice of a deficiency assessment. Section 7481 sets forth the conditions under which the decision of the Tax Court becomes final.

Here the plaintiffs deliberately failed and refused to test the validity of the deficiency assessment and assign as a reason therefor that the estate in such a trial would not have the right to a jury trial, but, as stated in Cheatham v. United States, supra, the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues.

The plaintiffs contend that the phrase, "any internal revenue tax", appearing in Section 7422, Internal Revenue Code of 1954, and in Section 1346 (a) (1) of Title 28 U.S.C., means that a taxpayer, after he has failed to avail himself of the statutory remedy to determine in the Tax Court the correct amount of the deficiency, may pay any sum that he deems himself able to pay, or desires to pay, on the assessment and then file a suit to recover said amount and incidentally invalidate the entire deficiency assessment. Such a contention appears to the court to be contrary to the system provided for the collection of the taxes due the government. To so hold, the court would be seriously impeding, if not destroying, the power of the government to collect its taxes. The court is of the opinion that the phrases make certain that a suit may be maintained for the recovery of all internal revenue taxes whether they be income, excess profits, estate taxes or what not. The phrases do not mean that a taxpayer may pay a portion of the assessment where the assessment complained of is not divisible, as in the instant case, and then maintain a suit. He must pay all of the tax, regardless of what kind of internal revenue tax it is, before the court can entertain the suit.

At a pre-trial conference and in their brief in opposition to the motion to dismiss, the learned attorneys for plain-

tiffs insist that the cases of Coates v. United States, 2 Cir., 111 F.2d 609; Sirian Lamp Company v. Manning, 3 Cir., 123 F.2d 776, 138 A.L.R. 1423; and Hanchett v. Shaughnessy, D.C.N.D.N.Y., 126 F.Supp. 769, and the unreported decision of the United States District Court for the Southern District of Florida in Wade v. Fahs, sustain their contention and are authority for the maintenance of the instant suit.

The court has not only read and carefully considered each of these decisions but has made an independent investigation in an effort to determine the question presented and is of the opinion that, since the complaint shows on its face that plaintiffs have not paid the entire tax assessed, they cannot maintain this suit. Their remedy to test the validity of the assessment was by proceeding in the Tax Court or by payment of the entire tax and then the filing of a suit to recover the taxes so paid.

Therefore, an order should be entered dismissing the complaint because it fails to state a claim within the jurisdiction of the court.