W. S. BUSHMIAER and Russell L. Myers, co-executors of the estate of J. W. Myers, deceased, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15420.

United States Court of Appeals Eighth Circuit.

Feb. 21, 1956.

Woodrough, Circuit Judge, dissented.

William H. Bowen, Little Rock, Ark. (Mehaffy, Smith & Williams, Little Rock, Ark., on the brief), for appellants.

Harry Marselli, Attorney, Department of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and David O. Walter, Attorneys, Department of Justice, Washington, D. C., Charles W. Atkinson, U. S. Atty., and Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., on the brief), for appellee.

Randolph W. Thrower and Sutherland, Asbill & Brennan, Atlanta, Ga., amici curiae.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellants W. S. Bushmiaer and Russell L. Myers in their representative capacities as co-executors of the estate of J. W. Myers, deceased, to recover $5,000.00 of additional income taxes paid for the years 1942 and 1943 by the estate in partial satisfaction of a deficiency assessment with civil fraud penalties of $94,-485.63 for 1942 and $43,503.65 for 1943. The appellants will be referred to as plaintiffs and appellee as defendant.

Plaintiffs alleged in their complaint that for the year 1942 agents of the government made an illegal and erroneous assessment of an additional income tax against the estate, that thereafter and on or about December 16, 1954 plaintiffs paid the sum of $2,500.00 in partial satisfaction of the additional assessed tax liability for the year 1942, following which payment they duly filed claim for refund for $2,500.00 which claim was in due course disallowed. By Count II of their complaint they charged that for the year 1943 agents of the government had similarly illegally and erroneously assessed additional income taxes against the estate and that they had paid $2,500.-00 in partial satisfaction of said additional assessed tax liability for the year 1943 and thereafter duly filed a claim

for refund of the amount so paid which claim was in due course disallowed.

They demanded a jury trial and judgment on each count of the complaint in the sum of $2,500.00 with interest thereon as provided by law together with their costs and disbursements in the action.

Defendant moved to dismiss the complaint on the grounds that:

"I

"The plaintiffs' complaint fails to state a claim within the jurisdiction of this Court and fails to state a claim upon which relief may be granted for the reason that the complaint shows on its face plaintiffs have not paid all of the federal income tax assessed against the estate of their decedent, part of which they seek to recover in this action.

"II

"That paragraph 4 of plaintiffs' complaint admits they have made payments of $2,500 in partial satisfaction of the assessed tax liability for each of the years 1942 and 1943.

"III

"That the federal income tax liability of the dedecent, J. W. Myers, for the years 1942 and 1943 is in the respective amounts of $94,485.63 and $43,503.65, of which plaintiffs paid only $5,000 on or about December 16, 1954, and there remains due and owing on the account of said tax liability a balance of $91,985.63 and $41,003.65, respectively, for each of the years involved, with interest according to law.

"In support of the foregoing there are attached hereto as Exhibits A and B to this motion photostatic copies of the following: The Commissioner's ninety-day letter, dated October 1, 1954, addressed to the Estate of J. W. Myers, Deceased, Van Buren, Arkansas, and Certificate of Assessments and Payments, signed by Olin S. Godwin, District Director, showing the tax assessed and paid and the outstanding amounts remaining unpaid for each of the years in question.

"The defendant further respectfully shows the Court that this is a suit against the United States and the statutory requisites to the bringing of a suit for refund of taxes in the District Court make it clear that the full assessed tax must first be paid."

The court expressing the view that it was without jurisdiction to hear and determine plaintiffs' action because they had not paid the full amount of the additional assessment made by the agents of the defendant prior to the commencement of the action entered its order sustaining defendant's motion and dismissed plaintiffs' complaint for the reason that it failed to state a claim within the jurisdiction of the court. From this judgment of dismissal plaintiffs prosecute this appeal alleging error in that: (1) The plain, unambiguous language of Title 28 U.S.C.A. § 1346(a) (1) and (2), as amended, vested the trial court with jurisdiction of this action, and the statute must be taken to mean what it says; (2) All the cases in which this question was presented held that the trial court had jurisdiction of the cause; (3) Congressional re-enactment of the Tucker Act with liberal rather than restrictive changes reflects legislative adoption of the Coates v. United States case; (4) Suits for refund of taxes paid in this circumstance in no way burden the Treasury Department in its collection of revenue; and (5) A consideration of the many ways in which the government has waived its immunity from suit, even absent the authorities hereinbefore considered, makes it clear that a literal, if not a liberal, interpretation of the language of Title 28 U.S.C.A. § 1346(a) (1) is required.

The so-called Tucker Act as originally passed by Congress in 1887 in effect waived the government's immunity from suit in a large class of cases and con-

ferred jurisdiction upon United States District Courts to sit as Courts of Claim, concurrent with the Court of Claims, of "all claims founded upon the Constitution of the United States or any law of Congress." Act of March 3, 1887, c. 359, Secs. 1 and 2, 24 Stat. 505. The act was not materially amended until 1911 when by amendment the Circuit Courts were abolished and their jurisdiction vested in the District Courts. Act of March 3, 1911, c. 231, Sec. 24, 36 Stat. 1087. This amendment raised the jurisdictional monetary ceiling of the District Courts from $1,000.00 to $10,000.00. The next material change in the Tucker Act occurred in 1921 at which time the act was amended so as to provide that District Courts should possess jurisdiction:

"'Concurrent with the Court of Claims, of any suit or proceeding, commenced after the passage of the Revenue Act of 1921 for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected, under the internal-revenue laws, even if the claim exceeds $10,000, if the collector of internal-revenue by whom such tax, penalty, or sum was collected is dead at the time such suit or proceeding is commenced.'" Revenue Act of 1921, c. 136, Sec. 1310(c), 42 Stat. 311.

In 1924 the act was re-enacted without change and in 1925 there were slight changes not here material. In 1954 the Tucker Act, as re-enacted, contains the following provisions with reference to the jurisdiction of District Courts in internal revenue tax cases:

"The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;" 28 U.S.C.A. § 1346(a) (1).

So far as the provisions of the Tucker Act are concerned the development by which it reached the form embodied in the 1954 act is not, we think, of the utmost importance as the 1954 act had been adopted prior to the initiation of this action which sought to invoke the jurisdiction of the District Court. That act in plain and unambiguous terms specifically confers jurisdiction on the District Courts of:

"Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

The present action would seem to come within the ambit of the above quoted provision. Even before the amendment of 1921 the Supreme Court had held that the District Courts had jurisdiction of actions to recover internal revenue taxes illegally collected because these claims were founded upon a law of Congress. In United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 461, 59 L.Ed. 813, Mr. Justice Hughes speaking for the Supreme Court, among other things, said:

" * * * and it follows that these claims must be deemed to be founded upon a 'law of Congress' within the meaning of the provisions of the Tucker act, now incorporated in the Judicial Code."

The motion to dismiss was based not only on the charge that the court was without jurisdiction but upon the allegation that the complaint did not state a claim upon which relief might be granted. The court granted the motion

upon the first ground but if it should have been granted upon the ground that the complaint did not state a claim upon which relief might be granted the judgment of the court would be correct even though the court may have given an erroneous ground for its action. McGivern v. Northern Pac. Ry. Co., 8 Cir., 132 F.2d 213; Standard Oil Co. v. Lyons, 8 Cir., 130 F.2d 965; Stolte v. Larkin, 8 Cir., 110 F.2d 226. It is therefore necessary to consider whether the complaint stated sufficient facts to entitle plaintiffs to any relief. It was the contention of defendant in the trial court, and it renews that contention here, that an action to recover a refund could not be maintained unless the taxpayer had first paid the total amount of the additional assessment and it was on this ground that the court sustained the motion to dismiss. In view of the positive, plain, and unambiguous provisions of the Tucker Act as amended in 1954 we cannot escape the conviction that the District Court had jurisdiction of the present action. The Revenue Act of 1954, it seems to us, assumes the existence of jurisdiction and provides procedure by which it may be invoked by the taxpayer. Before such an action may be brought the taxpayer must file a claim for refund. The provision in this regard reads as follows:

"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof." 26 U.S.C.A. § 7422(a).

It is argued that no such claim for refund could be made unless the tax had in fact first been paid. The claim for refund, however, is not for a refund of the tax as assessed but only for a refund of the tax as paid. In the instant case the claim for refund was limited in each instance to the amount paid and it is the contention of the plaintiffs that they have complied with the provisions of the statute in this regard and hence are entitled to invoke the jurisdiction of the court to an adjudication of their claim that the sums so paid were illegally and wrongfully collected. There is no provision in the revenue act specifically requiring the taxpayer to pay the full amount of the additional assessment unless that may be inferred from the provision requiring the taxpayer as a condition precedent to his right to maintain a civil action in the District Court to file a claim for refund. Plaintiffs could have pursued either of two remedies: they could have petitioned the Tax Court for a redetermination of the deficiency prior to payment of the tax with the usual right of appeal to this court if dissatisfied with the Tax Court's decision; or plaintiffs could have filed a claim for refund of the tax paid and upon its disallowance have brought an action for refund in the District Court with the right of appeal to this court. They literally followed the latter alternative. In the final analysis the ultimate question requiring determination in the instant case is whether plaintiffs regardless of how exhorbitant, unjust or illegal the additional assessment might be are required to pay the full amount of such assessment as a condition precedent to the right to invoke the jurisdiction of the District Court in an action to recover a refund. Supporting the affirmative of this inquiry defendant relies strongly on the cases of Cheatham v. United States, 92 U.S. 85, 23 L.Ed. 561, and the In re State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663. It should first be observed that in the Cheatham v. United States case, supra, taxpayer had in fact paid the full amount of the additional assessment claimed to be erroneous. There was therefore no question as to the necessity of such payment be-

fore the court and whatever was said in that regard was clearly obiter dictum. In the State Railroad Tax Cases, supra, plaintiffs brought equitable suit to enjoin the collection of state taxes and no federal internal revenue tax law was involved but the question was whether the taxpayers had pursued the administrative remedies available so as to entitle them to seek equitable relief. It should next be noted that both of these cases were decided long before the enactment of the so-called Tucker Act or the present income tax law. In Coates v. United States, 2 Cir., 111 F.2d 609, 610, it was contended that action to recover refund of taxes illegally collected could not be maintained because taxpayer had not paid the full amount of the taxes assessed. Answering this contention the court, among other things, said:

"The defendant urges that the district court did not have jurisdiction of the suit because the plaintiff, it is said, had not paid the entire tax for 1932 when he brought suit. The point did not impress the district judge and does not impress us. The contention that only a part of the 1932 tax had been paid when the action was brought involves the merits, not the jurisdiction. If the plaintiff's view as to the compensation received from the villages was sound, he had paid the entire tax and more when he started his action. It is pressing technicality beyond all bounds to say that a taxpayer who has made a return on an excessive basis and has paid installments which are more than the correct amount of tax before discovering his error, must pay the remaining installments indicated by the incorrect return on pain of losing his remedy to recover the overpayment. The proposition has neither reason nor authority in its favor. We reject the jurisdictional point and pass on to the merits."

See also Sirian Lamp Co. v. Manning, 3 Cir., 123 F.2d 776, 138 A.L.R. 1423; Hanchett v. Shaughnessy, D.C.N.D.N.Y.,

126 F.Supp. 769; Mertens, Law of Federal Income Taxation, Vol. 10, Sec. 58.47. In Mertens, Law of Federal Income Taxation, supra, the author in discussing the conditions precedent to the maintenance of a refund action in federal court says:

"It is now settled that the taxpayer need not make full payment of the entire tax shown on the return in order to maintain a suit for refund."

It is, we think, worthy of note that Section 6512(a) of the 1954 revenue act provides that upon filing a petition to the Tax Court, " * * * no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court * * * " (Emphasis supplied.) This certainly warrants the inference that in the absence of such petition to the Tax Court suit may be instituted for the recovery of a part of the tax set forth in the notice of deficiency. In addition to the cases of Cheatham v. United States, supra, and the State Railroad Tax Cases, supra, defendant cites a number of other decisions stressing particularly Suhr v. United States, 3 Cir., 18 F.2d 81 and Friebele v. United States, D.C.N.J., 20 F.Supp. 492. The facts in the Suhr v. United States case, supra, are such as to make it readily distinguishable from the case at bar. In the Suhr case the taxpayer had received a deficiency notice from the Commissioner and filed a petition for a review with the Board of Tax Appeals. Having elected to pursue his remedy before the Board of Tax Appeals he instituted suit for refund in the District Court thus attempting to pursue two inconsistent remedies at the same time. The court held that the District Court was without jurisdiction and in doing so made some reference to the dictum appearing in the Cheatham v. United States case, supra, relative to requiring prepayment of the entire tax precedent to suit for its recovery. If the Suhr case can be construed as holding that a payment of the full amount of the assessed deficiency is a necessary prerequisite to the maintenance of an action to recover a claimed refund then it is in

conflict with the case of Sirian Lamp Co. v. Manning, supra, decided by the same court some fourteen years later. As we have already observed the facts are so different from the facts involved in the present action that the case cannot be cited as a persuasive precedent. In Friebele v. United States, supra, urged by defendant as authority for its contention the taxpayer in fact maintained an action in court to recover not the whole but a part of the taxes assessed, the court holding that the assessment was divisible. What is said in that case in reference to a possible requirement in an action which was not before it relative to prepayment of assessed taxes as a prerequisite to the right to maintain an action for recovery was dictum upon dictum. Defendant also cites Bendheim v. Commissioner of Internal Revenue, 2 Cir., 214 F.2d 26, 27. That the question here involved was not an issue in that case appears from the following succinct statement of the court in that opinion:

"The taxpayer's petition for review presents a narrow procedural question affecting the jurisdiction of the Tax Court."

There was no question involving the jurisdiction of the District Court there presented. We have examined the opinions in the other cases cited by defendant on this point and find that they are all readily distinguishable by reason of the material difference in the facts involved. We close our discussion of this phase of the case by again quoting 26 U.S.C.A. § 7422(a) which reads as follows:

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

We reiterate that this provision does not require or even suggest that payment of all the tax claimed by the government is a prerequisite to the institution of suit for refund. The succinct statement of Judge Brennan in Hanchett v. Shaughnessy, supra [126 F.Supp. 770], strongly supports this conclusion. It is there said:

"The defendant makes a strong argument to the effect that practical considerations and the taxing policy of the United States require the payment of the whole tax before an action may be maintained to recover back a partial payment thereof. The argument is not without force, but legally it is reduced to a contention that the provisions of 26 U.S.C.A. § 3772 set out conditions precedent which require that the tax be paid in full before this action may be brought.

"A reading of the section, however, indicates that such conditions are concerned with the *filing of the claim*, rather than with the payment of the tax, and it is the status of the claim, as distinguished from the payment of the tax, upon which the right to maintain the action depends. The section by its language contemplates an action to recover ' * * * any sum alleged to have been excessive or in any manner wrongfully collected * * *.' The cause of action would seem to have ripened when 'any sum' has been wrongfully collected. Its maintenance is deferred until the prescribed conditions are met." (Italics supplied.)

It is finally argued that to allow suit by a taxpayer to recover part of the assessed tax without requiring a payment of the entire tax would impede the government in the collection of its taxes. This, it seems to us, is a misapprehension of the situation. The mere fact that suit may be instituted by a taxpayer to

recover part of the assessed tax does not prevent the government from proceeding to collect that part of the assessed taxes not sought to be recovered. In Sirian Lamp Co. v. Manning, supra [123 F.2d 778], the court answered this exact contention. In the course of the opinion it is said:

"The district court's conclusion that the complaint was premature was based upon the assumption that if litigation concerning any part of the deficiency tax were pending in the courts collection of the sum remaining due would necessarily be held in abeyance and that thus the prosecution of such litigation amounted in effect to an injunction against the collection of the balance of the tax and came within the prohibition of Section 3224 of the Revised Statutes. We see no basis, however, for the assumption that a suit for the recovery of a portion of a tax will necessarily prevent collection of the remainder while it is pending. It is true that there is a statutory provision (subparagraph (a) of Section 272 of the Internal Revenue Code) to the effect that when a petition is filed with the Board of Tax Appeals to redetermine a tax deficiency no distraint or proceeding in court for its collection shall be made, begun or prosecuted until the decision of the Board has become final. If, however, no petition has been filed subparagraph (c) of Section 272 of the Internal Revenue Code provides that 'the deficiency * * * shall be assessed, and shall be paid upon notice and demand from the collector.' This statute makes no exception for the situation in which a part of the deficiency has been paid and a suit for the recovery of the part payment is pending. We think that the pendency of such a suit does not relieve the taxpayer of present liability to pay the balance of the assessed deficiency."

After a tax liability is assessed and demand for payment made there exists a federal tax lien in favor of the Treasury Department attaching to all property and rights to property, whether real or personal, belonging to the taxpayer, whether owned at the time the lien attaches or whether acquired at any time thereafter during the life of the lien and state statutes purporting to exempt certain property from the reach of creditors are ineffective to bar the attachment of the federal tax lien. This lien is equal in rank to a judgment lien and need not be reduced to judgment preliminary to effecting execution on it. Manifestly, the proceeding to recover a partial payment can in no wise jeopardize or impede the government in the collection of its revenue. So far as the taxes involved in the instant suit are concerned the government has received the money and as to the balance it can at once proceed to collect without let or hindrance invoking the drastic remedies provided by law for that purpose.

The order appealed from is therefore reversed and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

WOODROUGH, Circuit Judge (dissenting).

Prior to 1924 an income taxpayer who felt himself aggrieved by the Commissioner's determination of his tax could only contest it in a court action after paying the amount assessed. Congress created the Board of Tax Appeals, an administrative body within Congressional control, in that year in order to temper the harshness of that situation and to provide such taxpayer an expeditious means of contesting taxes found against him in advance of paying principal or interest. Thereafter, as fully explained by the Supreme Court in Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, the aggrieved taxpayer has had two choices: (1) to contest the assessment before the Board (or its successor, Tax Court) without prepaying

tax or interest, or (2) to pay the tax and sue in District Court to get back any illegal excess paid and interest. The Commissioner has been administering the collection of income taxes on that basis for more than thirty years. The collectors have understood it to be according to law, millions of taxpayers have had it so explained to them and believed it, and it has been found to work. In recognition the Congress has raised the status of the Tax Board and made it a Tax Court which functions continuously at the will of Congress.

The taxpayers, appellants here, have undertaken to pursue a third course. They made relatively small payments "in partial satisfaction of [their] assessed tax liability for each of the years 1942 and 1943" then filed claims for refund on form 843, on which it was indicated that the Claim was for *Refund of taxes illegally, erroneously or excessively collected* and upon disallowance of the claim they filed their complaint herein. It alleges that the income tax liability asserted against them was illegally and erroneously assessed and that the amounts of the partial payments were illegally and erroneously collected. The prayer is for judgment for the amounts of the partial payments with interest, costs and disbursements. The appeal is to reverse the judgment of dismissal of the action entered by the trial court on motion. D.C., 131 F.Supp. 589.

I think the system of tax collection applied since 1924 which affords the taxpayer only the two means of contesting the validity of income taxes assessed against him is supported by the law and that there is no legal sanction for predicating a civil action for recovery of tax upon token payments as has been here attempted.

It is true there never has been any statute declaring in so many words that taxpayers are limited to the two choices of ways to contest their taxes. It is necessary to consider several statutory provisions to get at it, but I see no reason to believe that the administration of the tax system on the basis of the two choices is or has been without support in the law. It accords, I think, with the will of Congress sufficiently expressed that courts may not interfere with the collecting of taxes in the first instance.

As a fundamental Congress prohibits the courts from using their equity powers to interfere with tax collection by 26 U.S.C.A. § 7421, which provides that no suit for the purpose of restraining or enjoining the assessment or collection of any tax shall be maintained in any court. That is an absolute prohibition (with rare exceptions) which has prevented the equity action for nearly a hundred years and still stands.

But Congress did not stop at preventing the courts from using their equity powers to interfere with the collecting. It would obviously not accomplish the prevention of court interference with tax collection if the courts were left free to adjudicate taxes to be illegal in other forms of action before they are collected.

Accordingly, section 1346(a), 28 U.S. C.A.[1] and section 7422, 26 U.S.C.A., both amended in 1954, are directed to judicial powers respecting tax suits other than in equity. They confer and delimit the power of the District Court over suits by taxpayers against the United States to contest taxes. Both sections are consistent with and confirmative of the intent of Congress expressed in section 7421, to prohibit the courts from interfering with the collecting of taxes in the first instance.

The first section, 1346(a), is in the form of affirmatively conferring jurisdiction upon the District Court of a civil action against the United States for "the recovery of any internal-revenue tax".

The language "civil action against the United States for the recovery of * * tax" found in this section is a phrase of art. The only sense in which a taxpayer can be said to recover a tax from govern-

---

1. Sec. 1346(a) was amended "to delete the jurisdictional limitations of $10,000 imposed on suits to recover taxes." Sec. 7422 is merely codification so far as relevant here.

ment is in the sense that a tax has been assessed against and collected from him and he recovers his money back because of adjudication that the tax is void.

All of that is implicit in the phrase of the section. It may seem clumsy but it is old and there is no reason to doubt what Congress meant by it. To speak of a taxpayer recovering an uncollected tax from the government simply does not make sense. The tax that can be recovered must be complete. Both levied and collected. The income tax system has been administered, as I think rightly, on the basis that the action against the United States which Congress authorizes "to recover a tax" means an action to recover the amount of a tax that has been collected and ought to be "recovered" because of invalidity of the tax or collection.

So considered, section 1346(a) reflects exactly the same purpose that Congress manifested in 7421(a). It was meant to prevent court interference with collecting taxes in the first instance.[2]

The other section, 7422(a), headed Civil Actions For Refund is complementary to 1346(a). Section 1346(a) affirmatively confers jurisdiction of suits to recover taxes, and 7422(a) by prohibitory expressions regulates the procedure. The prohibition is against the maintenance of the action which is authorized in 1346(a) "for the recovery of any internal-revenue tax" "until a claim for refund or credit has been duly filed * * according to * * * the regulations * * *."

The purpose of limiting the right to maintain the action for recovery of tax until claim for refund has been filed is to provide for administrative examination of the taxpayer's claim of illegality in assessment and collection of the tax

before suit for recovery of the tax can be maintained. He must show the administrative officer before he can show the court what he claims respecting illegality in the assessment and collection of the tax.

The language of the section is entirely in accord with 7421(a) and 1346(a) and continues to indicate the intent of Congress to prevent court interference with tax collecting. Though there is no definition of the claim for refund, it is plainly intended to be identical with the complaint in "the action to recover the tax" and must claim a right to have a refund of a tax wrongfully assessed and collected. The form 843 duly filed by the taxpayers stated that it should have indicated on it by an X in the proper block that the claim for refund was for "Refund of Taxes Illegally, and Erroneously or Excessively Collected * * *". No provisions of the law justify maintenance of an action to adjudicate invalidity of a tax in order to recover a token payment that has been made thereon.

Congress did not intend to prevent courts from adjudicating against the United States at some stage upon the validity of any tax laid against a taxpayer. But Congress can and has prohibited judicial interference with the collecting of the tax in the first instance. Wisely and rightly in view of the relation of the tax collecting to the existence of government.

No weight should be ascribed in deciding this case to existence of powers to collect unpaid portions of taxes by seizures. We are concerned here with the lawfulness of the system of income tax administration of the United States as it has been and is conducted. The billions are collected under it in the faith that it is lawful. We must uphold it or strike it down solely upon our answer to

2. The section also includes authorization of a civil action to recover from the United States "any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws" but that provision can have no application to this action which by the complaint is for recovery of taxes based on the allegations that payment of $2500 was made in partial satisfaction of assessed tax liability and "the defendant illegally and erroneously determined and assessed the additional income tax liability asserted for 1942 [and 1943] and illegally and erroneously collected the $2500 of taxes paid by the estate for that year."

that question, whether it is or not. In the case before us plaintiffs are attempting to obtain adjudication upon the validity of taxes that have not been collected. They have delivered partial payments insignificant compared to the tax and request adjudication that the whole tax is illegal. I think all that is presented is an ingenious device to induce the court to disobey the long settled and fundamental prohibition that has been lawfully (and wisely) directed against courts interfering with the collecting of taxes in the first instance.

I would affirm the well considered judgment of the District Court.