Wade v. Wade 






NO. 10-91-066-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          MARVIN WADE,
                                                                                            Appellant
          v.

          EARLENE WADE,
                                                                                            Appellee

* * * * * * * * * * * * *

 From 66th Judicial District court
Hill County, Texas
Trial Court # 30543

* * * * * * * * * * * * *

MEMORANDUM OPINION

* * * * * * *
          Marvin Wade appealed from a final decree of divorce signed December 20, 1990. A
motion for new trial was filed in the trial court, making the record due in this court on April 16,
1991. See Tex. R. App. P. 54(a). The transcript was filed on April 16. To date, no statement
of facts has been filed. Appellant's brief was due on or before May 16. See id. at 74(k). No brief
has been filed on Appellant's behalf, nor has Appellant filed a motion for an extension of time for
filing his brief. See id. at 54(c).
          On May 21, Appellee filed a motion to dismiss for want of prosecution. Appellant filed
a response to Appellee's motion on May 31, requesting that additional time be allowed by this
court for him to find an attorney willing to handle the appeal. Appellant stated in his response that
the appeal had been refused by three law offices. The transcript filed in this case includes a
motion filed by Appellant's attorney at trial requesting that he be removed as attorney of record
because he and Appellant had been unable to agree on how the case should be handled.
          Pursuant to Appellee's motion, the appeal is dismissed for want of prosecution. See id.
at 74(l)(1).
                                                                                 PER CURIAM

Before Chief Justice Thomas,
          Justice Cummings and
          Justice Vance
Dismissed
Opinion delivered and filed July 11, 1991
Do not publish


      After the trial court denied her motion to suppress, Robyn Brown pled guilty to possession
of a controlled substance. The trial court deferred the adjudication of Brown’s guilt and placed
her on community supervision for three years. Brown appeals the denial of her motion to
suppress. We reverse.
Background
      Investigators Travis Higgenbotham and Shane Bush of the Brazos Valley Narcotics
Trafficking Task Force conducted investigations of people who had purchased iodine crystals from
a local feed store. Although commonly used as a medication for livestock, iodine crystals are also
used in the process of producing methamphetamine. The investigators noticed that Brown
purchased two 4-ounce packages of iodine crystals in June of 2001 and the same amount two
months later. When attempting to locate Brown, the investigators discovered she had moved and
now lived with Todd Radke. The current resident at Brown’s former address, Stephanie Torres,
told Investigator Bush that she knew Brown and that she believed Brown and Radke were
producing methamphetamine. She gave the investigators directions to Brown’s current residence.
      Once at the current residence, the investigators noticed a light blue Accura with temporary
tags parked in the driveway. They then positioned themselves at the end of the road to wait for
another investigator. Before his arrival, the Accura left Brown’s residence. The investigators
followed the vehicle. When the investigators observed a traffic violation, they called Deputy Paul
Martinez to stop the vehicle. The occupants of the vehicle were James Roberts and Kevin Bittle. 
Deputy Martinez noticed marijuana on the console between the driver, Roberts, and the passenger,
Bittle. Both also had outstanding warrants. While attempting to search Roberts, officers noticed
that he had something in his mouth. They retrieved three “good sized” bags of methamphetamine
from Roberts’s mouth. He was trying to swallow them. Investigator Bush suspected that the
methamphetamine came from Brown’s residence.
      Based on the investigation and the incident with Roberts, the investigators obtained a search
warrant of Brown’s current residence for methamphetamine. The search warrant was executed
at about 1:00 a.m. A group of task force officers attempted to gain entry of the residence by using
a halogen tool and a sledgehammer. The task force was unable to forcibly open the door, and
while still attempting the entry, Radke opened the door. Radke and Brown were ultimately
arrested.
      Brown filed a motion to suppress the evidence seized under the search warrant. The trial
court denied the motion.
Motion to Suppress
      A trial court's denial of a motion to suppress is reviewed for abuse of discretion. Oles v.
State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). As a general rule, the appellate courts
should afford almost total deference to a trial court's determination of the historical facts that the
record supports especially when the trial court's fact findings are based on an evaluation of
credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The
appellate courts should afford the same amount of deference to trial courts' rulings on "application
of law to fact questions," also known as "mixed questions of law and fact," if the resolution of
those ultimate questions turns on an evaluation of credibility and demeanor. Id. We may review
de novo "mixed questions of law and fact" not falling within this category. Id. The application
of relevant law, including search and seizure law, is reviewed de novo. Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000).
Standing
      In her first issue, Brown contends the trial court was correct in determining she had standing
to contest the search and seizure of evidence at the residence she shared with Radke. The trial
court determined she had standing and the State does not contest this ruling. To complain on
appeal, the party must have suffered an adverse ruling. Brown has suffered no adverse ruling. 
This issue presents nothing for review and is dismissed.
Search Warrant
      In her second issue, Brown contends the trial court erred in denying her motion to suppress
because the court erred in finding that the search warrant affidavit contained sufficient information
to establish probable cause for the issuance of a search warrant. Specifically, she complains that
the purchase of iodine crystals, by itself, was not sufficient probable cause; the information
received from Torres was not shown to be reliable; and the discovery of the contraband in the
vehicle detained after leaving the residence, by itself, did not establish probable cause.
      Applicable Law
      Whether probable cause exists to support the issuance of a search warrant is determined from
the "four corners" of the affidavit alone. Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim. App.
1996); Morris v. State, 62 S.W.3d 817, 821 (Tex. App.—Waco 2001, no pet.). Statements made
during the pre-trial hearing on the motion to suppress do not factor into that determination. Id. 
Because probable cause to support the issuance of the warrant is determined from the "four
corners" of the affidavit alone, we review the court's ruling on the motion to suppress de novo. 
Burke v. State, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref’d). That is, we apply the
same standard that the trial court applied when it evaluated the magistrate's decision to issue the
search warrant on the basis of the challenged affidavit. Id.
      In determining de novo the issue before the trial court, we do not, however, determine
independently, or de novo, if there was probable cause. Illinois v. Gates, 462 U.S. 213, 236, 103
S.Ct. 2317, 76 L.Ed.2d 527 (1983); Morris, 62 S.W.3d at 821. The United States Supreme Court
strictly prohibits such after-the-fact, de novo scrutiny. Id. Instead, we give great deference to the
magistrate's decision to issue the warrant and determine whether, considering the totality of the
circumstances, the magistrate had a "substantial basis for concluding probable cause existed." 
Gates, 462 U.S. at 238-39; Morris, 62 S.W.3d at 821. This deferential standard of review of a
magistrate's probable-cause determination promotes the United States Supreme Court's stated
policy of preserving the incentive to peace officers to obtain a warrant instead of conducting
warrantless searches. Massachusetts v. Upton, 466 U.S. 727, 733, 104 S.Ct. 2085, 80 L.Ed.2d
721 (1984); Morris, 62 S.W.3d at 821.
      A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient
to support a finding of probable cause. Tex. Code Crim. Proc. Ann. art. 18.01(b) (Vernon
Supp. 2003). The information with which the magistrate is supplied may be hearsay. Jones v.
United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled on other
grounds, United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); 
Castillo v. State, 739 S.W.2d 280, 291 (Tex. Crim. App. 1987).
      In determining whether a search warrant is based on probable cause, the affidavit is
interpreted in a common-sense, realistic manner; hyper-technical analysis should be avoided.
Upton, 466 U.S. at 732; Gibbs v. State, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991); Morris,
62 S.W.3d at 823. The reliability of the affiant and his sources of information are part of the
"totality of the circumstances" that the magistrate should evaluate in making his probable cause
determination. Johnson v. State, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), overruled on
other grounds, Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991). A magistrate is
entitled to rely on information supplied by a private citizen, since, unlike many police informants,
they are much less likely to produce false or untrustworthy information. Id.; Morris, 62 S.W.3d
at 824.
      Facts 
      The affiant for the search warrant affidavit was Phil Crowell, an investigator with the
Robertson County Sheriff’s Department. Through the affidavit, he informed the magistrate of the
following:
      Brown had twice purchased two containers of iodine crystals from a local feed store. 
Although the crystals are commonly used to medicate the hooves of horses, they are also used in
the reduction process of cooking methamphetamine. 
      Investigators went to Brown’s last known address and spoke to Stephanie Torres. Torres
stated that Brown no longer lived at the address but now lived at the last trailer house on the right
on Oakridge Drive in Robertson County. Torres also informed the investigators that Brown now
lived with Todd Radke and that she heard Brown had been cooking methamphetamine.
      When the investigators arrived at the trailer house on Oakridge Drive, they observed a light
blue vehicle with temporary tags parked at the end of the driveway. No one was inside the vehicle
or outside the residence. The investigators positioned themselves at the end of Oakridge Drive
to wait for Crowell, the affiant. While they were waiting, they saw the light blue vehicle travel
down Oakridge Drive to Jack Rabbit Lane. The investigators followed the vehicle. When the
driver of the vehicle committed a traffic violation, the vehicle was stopped. A usable amount of
marijuana was observed on the consol between the driver and the passenger. The driver, James
Roberts, had outstanding warrants for three motions to revoke probation. The passenger, Kevin
Bittle, had an outstanding parole warrant. While conducting a pat-down search of Roberts,
officers noticed something in his mouth that he was trying to swallow. They retrieved three
packages, one of which was tested and resulted in a positive test for methamphetamine. A small
glass vile containing an off-white powder substance was also located behind the driver’s seat.
      Application
      The purchase of the iodine crystals, the information provided by Torres, and the seizure of
methamphetamine from a vehicle that had just been seen where Brown resided, individually, may
not support probable cause. But we do not review these incidents in isolation. And we do not
exclude Torres’s information because the magistrate was entitled to rely on the information she
gave. Taken together, the magistrate had a substantial basis for concluding probable cause existed
to search the residence on Oakridge Drive. Thus, the affidavit is sufficient. The trial court did
not err, and Brown’s second issue is overruled.
“No-Knock” Entry
      In her third issue, Brown contends that the trial court erred in concluding that the officers’
entry into her residence did not violate the “knock and announce” rule. Specifically, she contends
that there was no evidence that a “no-knock” entry was necessary due to the threat of violence or
the destruction of evidence. We agree.
      Applicable Law
      The common law requires police to knock and announce their presence and purpose prior to
entering a home to search and/or arrest. The announcement must be made before any attempt at
forcible entry. See Richards v. Wisconsin, 520 U.S. 385, 394, 137 L. Ed. 2d 615, 117 S. Ct.
1416 (1997); United States v. Cantu, 230 F.2d 148, 151-152 (5th Cir. 2000).
      In 1995, the United States Supreme Court, for the first time, held that the common law
"knock and announce" rule forms a part of the reasonableness inquiry of a search and seizure
under the Fourth Amendment of the United States Constitution. Wilson v. Arkansas, 514 U.S.
927, 930, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995). The Fourth Amendment applies to state
government officials through the Fourteenth Amendment. In Wilson, the police entered the
defendant's home by opening a screen door without first announcing their presence. Id. at 929. 
Once inside, the officers seized marijuana, methamphetamine, valium, narcotics paraphernalia,
a gun, and ammunition. Id. Although Wilson incorporated the knock-and-announce rule into the
Fourth Amendment, it left unidentified the circumstances under which the failure to knock and
announce would be justified. Id. at 936. This fact intensive question was left to the lower courts. 
Id.
      Two years later, the Supreme Court addressed the Wisconsin Supreme Court’s conclusion that
exigent circumstances justifying a no-knock entry are always present in felony drug cases. 
Richards v. Wisconsin, 520 U.S. 385, 394, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997). In
rejecting the Wisconsin court’s blanket exception, the Supreme Court adopted a justification,
holding:
In order to justify a "no-knock" entry, the police must have a reasonable suspicion that
knocking and announcing their presence, under the particular circumstances, would be
dangerous or futile, or that it would inhibit the effective investigation of the crime by, for
example, allowing the destruction of evidence. 

Id. at 394. The court reasoned that "this standard--as opposed to a probable-cause requirement--strikes the appropriate balance between the legitimate law enforcement concerns at issue in the
execution of search warrants and the individual privacy interests affected by no-knock entries." 
Id. The reasonable suspicion showing is not high, but the police should be required to make it
whenever the reasonableness of a no-knock entry is challenged. Id. at 394-395. Reasonableness
is evaluated at the time of the entry. Id. at 395.
      Facts
      In her motion to suppress, Brown challenged the reasonableness of the officers’s no-knock
entry. Thus, it was the State’s burden to justify the reasonableness of the entry. Of the many
officers that participated in the execution of the search warrant, only four testified at the hearing
on the motion to suppress. Phil Crowell testified that the warrant was executed at around 1:00 in
the morning. He was the third officer in. He recalled that they had trouble getting in the front
door and that Radke opened the door for them. Crowell was unsure if anyone announced their
presence because that was not his job. He stated that the standard practice is to announce and just
go in. He also stated that if they go in unannounced, they do so because they are worried about
the destruction of evidence.
      Higgenbotham testified that his primary responsibility during the execution of the search
warrant was to wait outside the residence to see if anyone ran from or approached it. He stated
that the normal procedure is to knock on the door, advise the occupants of a search warrant and
then go in. He did not know if anyone followed this procedure. Shane Bush recalled that they
used a “halogen tool” to try to breach the door. Someone on the inside of the residence then
opened the door. He stated that some of the officers were saying “police” at about the same time
the door was opened. Joe Davis was the officer with the tool to gain entry to the residence. He
first tried the door to see if it was locked. It was. He then put the tool in the door, and it was hit
with a sledgehammer. He stated he did not announce “police” prior to putting the tool in and
having it hit. As the sledgehammer was swung, they announced their presence. He stated that
they try to announce as they make entry.
      The trial court found that entry to the residence was made without the officers knocking and
announcing their purpose prior to the entry in this particular instance. It then concluded that there
was sufficient cause to believe that the danger of physical violence to the officers as well as the
danger that the evidence would be destroyed justified the entry without first knocking and
announcing the officers’s purpose.
      Application
      There was simply no testimony from any of the officers at the hearing on the motion to
suppress as to the need for a no-knock entry. Additionally, there was no evidence enunciated in
the search warrant that would justify a no-knock entry. For example, there was no testimony or
evidence that either Brown or Radke were violent or were known to keep weapons in their home;
no testimony about the ease of destructibility of methamphetamine; no testimony that Brown or
Radke were attempting to destroy any evidence. There was a general statement by one of the
officers that if they did not knock and announce, it was because they were concerned about
destruction of the evidence. This is not enough. The State had the burden to justify this particular
no-knock entry based upon the facts and circumstances of which the officers were aware and failed
to carry that burden.
      As an alternative argument, the State contends that the entry was made pursuant to the knock
and announce rule because Radke opened the door while the officers were attempting to forcibly
gain entry and while they were announcing their presence. However, this argument is
unpersuasive because the Supreme Court has said that the announcement must be made before
forcible entry is attempted. Richards, 520 U.S. at 387 (citing Wilson, 514 U.S. at 934). And in
this case, forced entry had already been attempted before Radke opened the door for the officers.
      Because the State did not provide any evidence which justified a no-knock entry by the task
force officers, the trial court properly concluded that the entry was made without knocking and
announcing their purpose prior to the attempted entry but erred in concluding the entry was
justified. Brown’s third issue is sustained.
Conclusion
      The trial court erred in concluding, on this record, that the task force’s no-knock entry into
Brown’s residence was justified. This cause is reversed and remanded to the trial court for further
proceedings consistent with this opinion.
 
                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Reversed and remanded
Opinion delivered and filed July 30, 2003
Publish
[CR25]